# EXHIBIT B

# Distinguished.

**Distinguished Programs Insurance Brokerage, LLC**
1180 Ave of the Americas, 16th Floor, New York, NY 10036
(844) DISTINS   |   www.distinguished.com

UM3718488

# **Acknowledgment**

I, __Natalie Rowe, of     __Distinguished Programs Insurance Brokerage LLC, **states as follows**:

**Policy #:**  UM3718488__

**Insured Name:**  _Global Management & Investment Corporation

**Certificate Holder's Coverage Term**: *11/26/2015_____to __11/26/2016__

**I have reviewed and confirm that a true and complete copy of the above policy along with all endorsements, is attached to this acknowledgment.**

____Natalie Rowe_____
**Underwriting Representative**

_____6/4/2024_____
**Date**



# CERTIFICATE OF COVERAGE
## UMBRELLA AND EXCESS LIABILITY INSURANCE

| Certificate Number | Participating Insurance Company | Master Policy Number |
|---|---|---|
| 2732 | See Below | See Below |

## SELECT HOSPITALITY INSURANCE GROUP, INC.
### A Hospitality Purchasing Group

SELECT HOSPITALITY INSURANCE GROUP, INC. Purchasing Group Member and Mailing Address:

Global Management & Investment Corporation

285 Country Club Dr.  Suite 100
Stockbridge, GA 30281

Designated Location(s) and Other Named Insured(s): See Schedule of Named Insureds & Schedule of Covered Locations Form #IDP 001 attached to and forming part of this Certificate of Coverage.

Coverage Period: 11/26/2015 to  11/26/2016
12:01 AM a.m. Standard Time at the Mailing Address of Purchasing Group Member as stated herein.

## APPLICABLE LIMITS OF INSURANCE AND PARTICIPATING INSURERS:

COMBINED LIMIT OF LIABILITY: $25,000,000 EACH OCCURRENCE AND AGGREGATE AS APPLICABLE

| Lead Insurance | Policy Number | Limits of Insurance | |
|---|---|---|---|
| Great American Alliance Ins. Co. | UM 3718488 | $10,000,000 | Each Occurrence |
| | | $10,000,000 | General Aggregate (where applicable) |
| | | $10,000,000 | Products/Completed Operations |
| | | $300,000 | Crisis Response Aggregate Limit |

| **Excess Insurance** | | | |
|---|---|---|---|
| Ironshore Indemnity Inc. | 002412900 | $15,000,000 | Each Occurrence and Aggregate Excess of $10,000,000 |

## SCHEDULE OF UNDERLYING INSURANCE LIMITS OF LIABILITY:

See Schedule A - Schedule of Underlying Policies - Form No. GAI 6003 (Ed. 06 97) attached to Policy No. UM 3718488

### FORMS AND ENDORSEMENTS:

See Forms and Endorsements Schedule - Form No. GAI 6013 (Ed. 06 97) attached to Policy No. UM 3718488

### ADDITIONAL ENDORSEMENTS, EXTENSIONS, EXCLUSIONS, OR EXCEPTIONS    attached to Policy No. UM 3718488

THE MASTER INSURANCE POLICY(IES) STATED ABOVE IS (ARE) ISSUED TO SELECT HOSPITALITY INSURANCE GROUP, INC., A HOSPITALITY PURCHASING GROUP. THE INSURANCE APPLIES TO THE PURCHASING GROUP MEMBER(S) NAMED ABOVE AND IS GOVERNED BY AND SUBJECT TO ALL THE TERMS, EXCLUSIONS, AND CONDITIONS OF THE MASTER POLICY.

### UNDERLYING INSURANCE REQUIREMENTS:

IT IS WARRANTED BY THE PURCHASING GROUP MEMBER AND/OR THEIR PRODUCER THAT THE UNDERLYING INSURANCE MEETS OR EXCEEDS THE MINIMUM REQUIREMENTS AS SHOWN IN SCHEDULE OF UNDERLYING INSURANCE - FORM # GAI 6003 (Ed. 06 97 ATTACHED TO POLICY # UM 3718488

Date Issued: 11/25/2015                Authorized Signature:



# UMBRELLA DIRECT CLAIMS
# REPORTING INSTRUCTIONS

### IDP INSURANCE BROKERAGE LLC

### SELECT HOSPITALITY INSURANCE GROUP, INC.

- E-mail all claim documents directly to the applicable umbrella insurers (see the Members' Certificate of Coverage for a list of participating insurers) at the appropriate email addresses listed below.

- Submit a complete first notice of Loss (Acord Notice of Loss form or equivalent) that includes the following information: Insured Name, Date of Loss, Location Address, Claimant's name, and Description of the loss.

- Please attach a copy of the Certificate of Coverage to the Notice of Loss which lists the policy numbers in order for the insurer to verify coverage

- Attach all other pertinent documents including, but not limited to, Summons & Complaint, Incident Reports, and Police Reports.

- Where available, provide the primary insurer's contact information including Insurer Name, Policy No., Claim No., Adjuster's name and phone number.

| Insurer | Email | Phone/Fax |
|---|---|---|
| **Great American Alliance Insurance Company** <br> P.O. Box 2575 <br> Cincinnati, OH 45201 | dpgclaims@gaig.com | (F) 513-412-8435 |
| **Ironshore Indemnity Inc.** <br> c/o Certus Claims <br> P.O. Box 1030 <br> Camarillo, CA 93011 | IronshoreUMB02@certusclaims.com | (F) 805-987-8806 |



## COMMERCIAL UMBRELLA & EXCESS LIABILITY INSURANCE
## SCHEDULE OF NAMED INSUREDS AND COVERED LOCATIONS

Schedule of Named Insureds Applicable to Certificate No. 2732
Purchasing Group Member: Global Management & Investment Corporation

Shiv Global Hotel, LLC DBA Knights Inn                                11/26/15

Schedule of Covered Locations Applicable to Certificate No. 2732
Purchasing Group Member: Global Management & Investment Corporation

Date Issued: 11/26/2015                                              Page 1 of 1





Loc # 24: Knights Inn, 2859 Panola Rd., Lithonia, GA  30058  USA          11/26/15



## PARTICIPATION AGREEMENT AND DISCLOSURE STATEMENT

Select Hospitality Insurance Group, Inc. ("Select") is a purchasing group as defined in the federal Risk Retention Act of 1986, and is organized under the laws of the state of Delaware. Select is authorized to purchase insurance for its hotel, motel, resort, or other host residence facility(s) members. Select purchases master policies of insurance on behalf of the members in the purchasing group.  The cost of obtaining these policies includes premiums, commissions paid to agents or brokers, fees to third-party claims investigation and claims payment services, and general administration fees and expenses, including fees paid to Select's Manager.  Select's officers may at their discretion allocate such costs associated with obtaining these policies among the members of the purchasing group. All such premiums, commissions, fees and expenses are non-auditable.  By accepting the insurance offered in the Proposal for Insurance, incorporated into this document by reference, the entity(s) identified in the "Named Insured" Proposal schedule (hereafter, "Member") becomes a member of Select and agrees to participate in the insurance program offered by Select.

Member hereby acknowledges that the cost to Select for purchasing insurance policies on behalf of its members includes the premiums, commissions, and the administrative and management fees and expenses referred to above ("Program Costs").  Member (i) understands that the quoted amount payable by the Member includes its share of these Program Costs, as allocated by Select's officers or their designees, and (ii) agrees to pay its share of these Program Costs, included in the quotation, as a condition of membership in Select Hospitality Insurance Group, Inc. Member further acknowledges that the Program Costs may also include taxes and fees assessed by individual states.

As a member of Select, Members shall be entitled to participate in the insurance program offered by Select and shall have an opportunity with all other members to apply for and purchase insurance coverages offered through Select. Except as otherwise specified in this document, Member shall have no rights regarding the general governance of Select and shall not have or succeed to any voting rights with respect to the corporate affairs of Select.

GAI 6012 (Ed. 06 97)

**Policy No.** UM 3718488
**Effective Date of Change** 07/31/15

## POLICY CHANGES

| NAMED INSURED AND ADDRESS: | POLICY PERIOD: |
|---|---|
| Select Hospitality Insurance Group, Inc.<br>1201 N. Orange Street, Suite 710<br>Wilmington, DE  19801-1186 | 12:01 A.M. STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED SHOWN AT LEFT.<br><br>FROM: 07/31/15 TO:  07/31/17 |
| **THIS ENDORSEMENT CHANGES THE POLICY.**<br><br>**PLEASE READ IT CAREFULLY.** | **AGENT'S NAME AND ADDRESS:**<br><br>IDP Insurance Brokerage LLC<br>10900 NE 4th Street Suite 1100<br>Bellevue, WA  98004-5886 |

INSURANCE IS AFFORDED BY THE COMPANY INDICATED BELOW:
(EACH A CAPITAL STOCK CORPORATION)

( ) GREAT AMERICAN INSURANCE COMPANY      ( ) GREAT AMERICAN ASSURANCE CO.
( X ) GREAT AMERICAN ALLIANCE INS. CO.        ( ) GREAT AMERICAN INSURANCE CO. OF NY
( ) GREAT AMERICAN E & S INSURANCE COMPANY

It is hereby agreed that form **CRISIS RESPONSE COVERAGE ENDORSEMENT, GAI 7235**, is amended per attached.

**FORMS AND ENDORSEMENTS** hereby added:

**FORMS AND ENDORSEMENTS** hereby amended: GAI 7235

**FORMS AND ENDORSEMENTS** hereby deleted:

Countersigned_____      By_____
                    Date                                    Authorized Representative

GAI 6012 (Ed. 06/97) PRO          (Page 1 of 1)

**GREAT**AMERICAN®
INSURANCE GROUP

Administrative Offices
301 E 4th Street
Cincinnati OH  45202-4201
513 369 5000 ph

GAI 7235 (Ed. 06 13)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CRISIS RESPONSE COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

**Schedule**

| Crisis Response Coverage | Limit of Insurance |
|---|---|
| Crisis Response Aggregate Limit | $ Per Individual Certificate of Coverage |

Subject to the terms and conditions set forth in this endorsement and the Limit of Insurance shown in the above Schedule, the following Crisis Response Coverage is added to the policy.

**SECTION I -  CRISIS RESPONSE COVERAGE**

A.   We will pay on your behalf reasonable and necessary "crisis response costs" you incur because of either:

1.   "bodily injury" or "property damage" for which coverage is provided under the COMMERCIAL UMBRELLA COVERAGE FORM (including all its endorsements other than this endorsement), or

2.   "imminent injury,"

arising out of a "crisis event" to which this insurance applies. The amount we will pay on your behalf for such "crisis response costs" is limited as described in SECTION II -  CRISIS RESPONSE LIMITS OF INSURANCE.

B.   This Crisis Response Coverage applies to a "crisis event" and its resulting "crisis response costs" only if:

1.   The "bodily injury," "property damage," or "imminent injury" arising out of that "crisis event" takes place in the "coverage territory"; and

2.   That "bodily injury," "property damage," or "imminent injury" begins to occur during the Policy Period; and

3.   The "crisis response costs" because of that "bodily injury," "property damage," or "imminent injury" do not arise out of any fact, circumstance, condition, situation, "bodily injury," "property damage," or "imminent injury":

a.   that existed before the Policy Period; and

b.   that you, before the beginning of the Policy Period, knew or reasonably should have known could lead to, cause, give rise to, or result in such "crisis response costs"; and

4.   You incur the "crisis response costs" because of the "bodily injury," "property damage," or "imminent injury" within thirty (30) days after the beginning of the "crisis event." The end of the Policy Period will not cut short this thirty (30) day period.

GAI 7235 (Ed. 06/13)                    (Page 1 of 4)

**C.** Our payment of "crisis response costs" under this Crisis Response Coverage is not, and shall not be construed as, an admission or acknowledgement of coverage for any "crisis event," "bodily injury," "property damage," or "imminent injury" under any other part of this policy.

**D.** Under this Crisis Response Coverage, we neither have nor undertake any duty to defend, pay, or settle any "claim" or "suit" against any Insured.

## SECTION II -  CRISIS RESPONSE LIMITS OF INSURANCE

**A.** The Schedule above and the rules below establish the most we will pay on your behalf for "crisis response costs," regardless of the number of Insureds, "crisis events," or "affected persons."

**B.** The Crisis Response Aggregate Limit is the most we will pay (whether by reimbursing you or by paying on your behalf) for the sum of all "crisis response costs."

**1.** The Crisis Response Aggregate Limit is separate and apart from, and not part of or subject to, any other limit of insurance stated in this policy.

**2.** Our payment of "crisis response costs" under the Crisis Response Aggregate Limit does not reduce any other limit of insurance under this policy.

**3.** Once exhausted, the Crisis Response Aggregate Limit can not be reinstated, extended, or increased.

## SECTION III -  EXCLUSIONS

This Crisis Response Coverage does not apply to:

**A.  Excluded Bodily Injury or Property Damage**

"Crisis response costs" you incur because of:

**1.** "bodily injury" or "property damage" for which coverage would be excluded under any exclusion in Section **IV. EXCLUSIONS** of the COMMERCIAL UMBRELLA COVERAGE FORM; or

**2.** "imminent injury" if the threatened "bodily injury" or "property damage" is of a kind for which coverage would be excluded under any exclusion in Section **IV. EXCLUSIONS** of the COMMERCIAL UMBRELLA COVERAGE FORM.

**B.  Other Excluded Obligations**

Any obligation, damages, liability, cost, or expense for which coverage would be excluded by exclusions **A.**, **L.**, **R.**, **S.**, **U.**and **W.**, of Section **IV. EXCLUSIONS** of the COMMERCIAL UMBRELLA COVERAGE FORM, or by the Nuclear Energy Liability Exclusion.

**C.  Newly acquired or merged entities**

"Crisis response costs" arising from the operations of another business or organization which you acquire or with which you merge, if those "crisis response costs" arise from a "crisis event" that began before you acquired or merged with that other business or organization.

**D.  Infectious Diseases or Illnesses**

"Crisis response costs" arising out of any infectious disease or condition of ill health caused by any "biological agents". However, this exclusion does not apply to "crisis response costs" you incur because of a food-borne illness or defective vaccine.

GAI 7235 (Ed. 06/13)                                    (Page 2 of 4)

**E.   Economic or Trade Sanctions**

Any "crisis response costs" as to which our payment or reimbursement would be a violation of any economic or trade sanction enacted or imposed by the United States of America, including, but not limited to, sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

**SECTION IV - DEFINITIONS**

The definitions of the COMMERCIAL UMBRELLA COVERAGE FORM apply to this endorsement. The following additional definitions also apply to this coverage part:

**A.**   "Affected person" means:

1.   an individual who suffers "bodily injury" or "property damage," or directly experiences "imminent injury"; and

2.   the immediate family members of a person described in **1.**, above.

**B.**   "Biological agents" means:

1.   bacteria, other microorganisms, mycotoxins, spores or other by-products of any of the foregoing;

2.   viruses or other pathogens (whether or not a microorganism); or

3.   colony or group of any of the foregoing.

**C.**   "Coverage territory" means the United States of America, including its territories and possessions, Puerto Rico, and Canada.

**D.**   "Crisis event" means an event you reasonably believe has resulted, or may result, in both:

1.   Damages covered by this policy that are in excess of all applicable:

   **a.**   "underlying insurance";

   **b.**   "retained limits"; and

   **c.**   other insurance; and

2.   Significant adverse regional or national media coverage.

**E.**   "Crisis management firm" means a public relations firm or crisis management firm, assigned or approved by us in writing, that is hired by you to perform or coordinate services of a type described in the definition of "crisis response costs" in connection with a "crisis event."

**F.**   "Crisis response costs" means only the following expenses incurred by the Insured in response to a "crisis event" to which this insurance applies, and which are reasonable, necessary, and directly attributable to that "crisis event":

1.   Expenses incurred by you to secure the scene of the "crisis event";

2.   Fees charged by a "crisis management firm" for its professional service or advice;

3.   Funeral expenses for "affected persons";

4.   "Emergency psychology expenses";

5.   Temporary living expenses for "affected persons";

GAI 7235 (Ed. 06/13)                                   (Page 3 of 4)

**6.**  "Emergency transport expenses"; and

**7.**  Any other expenses approved by us.

"Crisis response costs" does not include any cost or expense to defend, pay, or settle any "claim" or "suit" against any Insured.

**G.**  "Emergency transport expenses" means reasonable and necessary emergency transport expenses, occurring within 24-hours after a "crisis event," to transport an "affected person" sustaining "bodily injury" in a "crisis event" to a medical treatment facility.

**H.**  "Emergency psychology expenses" means reasonable and necessary expenses for psychology or counseling services provided to "affected persons," if such services are:

**1.**  rendered within the first fourteen (14) days after the beginning of a "crisis event"; and

**2.**  approved by a "crisis management firm."

However, "emergency psychology expenses" do not include any cost or expense of any medication, hospitalization, or in-patient treatment.

**I.**  "Imminent injury" means an actual and immediate threat of "bodily injury" or "property damage."

## SECTION V - CONDITIONS

All conditions under Section **VI. Conditions** of the COMMERCIAL UMBRELLA COVERAGE FORM apply to this Crisis Response Coverage, except conditions **A.**, **C.**, and **F.**. The following additional conditions also apply to this Crisis Response Coverage:

**A.**  **Duties in the Event of A "Crisis Event"**:

**1.**  You must see to it that we are notified of any "crisis event" within twenty-four (24) hours after it begins. If necessary, we will assist you in contacting an approved "crisis management firm," unless we agree to accept a "crisis management firm" you have selected.

**2.**  If you seek reimbursement from us of any "crisis response costs," you must request such reimbursement in writing within ninety (90) days after you incur those "crisis response costs." Each such request for reimbursement must include invoices and/or receipts proving and describing the "crisis response costs" with reasonable particularity.

**This endorsement does not change any other provision of the policy.**

GAI 7235 (Ed. 06/13)                                        (Page 4 of 4)

GAI 6001 (ED. 06 97)

**Policy No.:**   UM 3718488
**Renewal of**:   UM 3305246

## THE PROTECTOR COMMERCIAL UMBRELLA DECLARATIONS PAGE

| 1.  NAMED INSUREDAND ADDRESS:<br>Select Hospitality Insurance Group, Inc.<br>1201 North Orange Street, Suite 710<br>Wilmington, DE 19801 | 2.  POLICY PERIOD:<br>12:01 A.M. Standard Time at the<br>address of the Named Insured<br>shown at left.<br>From  7/31/2015     To  7/31/2017 |
|---|---|
| IN RETURN FOR PAYMENT OF THE PREMIUM,<br>AND SUBJECT TO ALL TERMS OF THIS POLICY,<br>WE AGREE WITH YOU TO PROVIDE THE<br>INSURANCE AS STATED IN THIS<br>POLICY. | PRODUCER'S NAME AND ADDRESS:<br>IDP Insurance Brokerage LLC<br>10900 NE 8th Street, Suite 1170<br>Bellevue, WA  98004-5886 |

Insurance is afforded by :  GREAT AMERICAN ALLIANCE INSURANCE COMPANY

**3.  PREMIUM**:

**4.  LIMITS OF INSURANCE:**     $Per Certificate of Coverage     EACH OCCURRENCE
$Per Certificate of Coverage     GENERAL AGGREGATE (WHERE APPLICABLE)
$Per Certificate of Coverage     PRODUCTS-COMPLETED OPERATIONS

**5.  SELF-INSURED RETENTION:  $  NONE**

**6.  FORMS AND ENDORSEMENTS** applicable to all Coverage Forms and made part of this Policy at the time of issue are listed on the attached Forms and Endorsement Schedule, GAI 6013 (Ed. 06/97).

Countersigned:  _____By _____
            Date                    Authorized Representative

GAI 6001 (Ed. 06/97) PRO                    (Page 1 of 1)



Administrative Offices
301 E 4th Street
Cincinnati, Ohio  45202-4201
513 369 5000 ph

**GAI 6013 (Ed. 06 97)**

## FORMS AND ENDORSEMENTS SCHEDULE

It is hereby understood and agreed the following forms and endorsements are attached to and are a part of this policy:

| Form Number | Edition Date | Form Description |
|---|---|---|
| GAI 6001 | 06/97 | Protector Commercial Umbrella Declarations Page |
| GAI 6013 | 06/97 | Forms and Endorsements Schedule |
| GAI 6002 | 04/10 | The Protector Commercial Umbrella Coverage Form |
| GAI 6003 | 06/97 | Schedule A - Schedule Of Underlying Insurance |
| GAI 6341 | 06/97 | Limitation Of Coverage To Specified Locations Endorsement |
| GAI 7241 | 07/12 | Risk Purchasing Group Endorsement |
| GAI 7235 | 06/13 | Crisis Response Coverage Endorsement |
| GAI 7282 | 03/15 | Underlying Claims-Made Coverage |
| GAI 7305 | 03/15 | Limitation of Coverage For Underlying Sublimits |
| GAI 6129 | 04/10 | Personal Injury - Following Form |
| GAI 6047 | 04/10 | Advertising Injury - Following Form |
| GAI 6153 | 04/10 | Employee Benefit Liability – Following Form |
| GAI 6126 | 04/10 | Liquor Liability – Following Form |
| GAI 6136 | 04/10 | Punitive or Exemplary Damages - Following Form |
| GAI 6134 | 04/10 | Products-Completed Operations – Following Form |
| GAI 6050 | 06/97 | Intellectual Property Exclusion |
| GAI 6333 | 06/97 | Exclusion – Liability Arising Out Of Lead |
| GAI 6135 | 06/97 | Professional Liability Exclusion |
| GAI 6011 | 06/97 | Amendment Of Pollution Exclusion – Exception For Specified Perils |
| GAI 6011 | 06/97 | Exclusion-Nuclear, Biological, or Chemical From A "Certified Act of Terrorism" |
| GAI 7281 | 08/14 | Exclusion–Organic Pathogens With Exception For Food and Beverages (except in NY) |
| GAI 6819 | 10/04 | Silica Or Related Dust Exclusion |
| GAI 7278 | 06/13 | Broad Named Insured |
| GAI 7279 | 06/13 | Transfer Of Rights Of Recovery Against Others To Us – Waiver Of Rights |
| GAI 6472 | 04/10 | Disclosure Pursuant To Terrorism Risk Insurance Act |
| GAI 6011 | 06/97 | Cap On Losses From Certified Acts Of Terrorism |
| GAI 6458 | 04/10 | Exclusion Of Punitive Damages Related To A Certified Act of Terrorism |
| GAI 7268 | 05/14 | Exclusion – Access or Disclosure of Confidential or Personal Information and Data-Related Liability – Limited Bodily Injury Exception Not Included |
| GAI 7314 | 03/15 | Supplementary Payments - Interest |
| IL 7268 | 09/09 | In Witness Clause |



Administrative Offices
301 E 4th Street
Cincinnati OH 45202-4201
513 369 5000 ph

**GAI 6002**
(Ed. 04 10)

# T H E   P R O T E C T O R

## COMMERCIAL UMBRELLA COVERAGE FORM

There are provisions in this Policy that restrict coverage. Read the entire Policy carefully to determine rights, duties and what is and is not covered.

Throughout this Policy, the words "you" and "your" refer to the Named Insured as defined in Insuring Agreement, **V. DEFINITIONS**. The words "we," "us," and "our" refer to the Company providing this insurance. The word "Insured" means any person or organization qualifying as such in Insuring Agreement, **V. DEFINITIONS**. Words and phrases that appear in quotation marks have special meanings that can be found in **V. DEFINITIONS** or in the specific Policy provision where those words appear.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations we agree with you to provide coverage as follows:

### INSURING AGREEMENTS

**I.  COVERAGE**

   **A.**  We will pay on behalf of the "Insured" those sums in excess of the "retained limit" that the "Insured" becomes legally obligated to pay as damages, by reason of liability imposed by law or assumed by the "Insured" under an "insured contract," because of:

   **1.**  "bodily injury" or "property damage" that takes place; or

   **2.**  "personal injury" or "advertising injury" arising from an offense committed;

   during the Policy Period and caused by an "occurrence" happening anywhere. If we are prevented by law or statute from paying such sums on behalf of the "Insured," then we will indemnify the "Insured" for them. The amount we will pay for damages is limited as described below in **Section II. LIMITS OF INSURANCE**.

   **B.**  This insurance applies to "bodily injury," "property damage," "personal injury," or "advertising injury" only if, prior to the Policy Period, no "Insured" knew that the "bodily injury," "property damage," "personal injury," or "advertising injury" had occurred, in whole or in part. If any "Insured" knew, prior to the Policy Period, that the "bodily injury," "property damage," "personal injury," or "advertising injury" had occurred in whole or in part, then any continuation, change, or resumption of such "bodily injury," "property damage," "personal injury," or "advertising injury," during or after the Policy Period, will be deemed to have been known prior to the Policy Period.

   **C.**  "Bodily injury," "property damage," "personal injury," or "advertising injury" which occurs during the Policy Period and was not, prior to the Policy Period, known to have occurred by any "Insured," includes any continuation, change, or resumption of that "bodily injury," "property damage," "personal injury," or "advertising injury" after the end of the Policy Period.

GAI 6002 (Ed. 04/10) XS                        (Page 1 of 26)

**D.** "Bodily injury," "property damage," "personal injury," or "advertising injury" will be deemed to have been known by all "Insureds" to have occurred at the earliest time when any "Insured":

    **1.** reports all, or any part, of the "bodily injury," "property damage," "personal injury," or "advertising injury" to us or any other insurer;

    **2.** receives a written or verbal demand or "claim" for damages because of the "bodily injury," "property damage," "personal injury," or "advertising injury"; or

    **3.** becomes aware by any other means that "bodily injury," "property damage," "personal injury," or "advertising injury" has occurred or has begun to occur.

## II.  LIMITS OF INSURANCE

**A.** The Limits of Insurance shown in Item **4.** of the Declarations and the rules below state the most we will pay regardless of the number of:

    **1.** "Insureds";

    **2.** "claims" made or "suits" brought; or

    **3.** persons or organizations making "claims" or bringing "suits."

**B.** The General Aggregate Limit is the most we will pay for all damages covered under the Insuring Agreement in **Section I.**, except:

    **1.** damages included in the "products-completed operations hazard"; and

    **2.** coverages included in the policies listed in the Schedule of Underlying Insurance to which no underlying aggregate limit applies.

The amount stated in the Declarations as the General Aggregate Limit is the most we will pay for all damages arising out of any "bodily injury," "property damage," "personal injury," or "advertising injury" subject to an aggregate limit in the "underlying insurance." The General Aggregate Limit applies separately and in the same manner as the aggregate limits in the "underlying insurance."

**C.** The Products-Completed Operations Aggregate Limit stated in the Declarations is the most we will pay for all damages included in the "products-completed operations hazard."

**D.** Subject to **B.** or **C.** in **Section II. LIMITS OF INSURANCE**, whichever applies, the Each Occurrence Limit stated in the Declarations is the most we will pay for damages covered under the Insuring Agreement in **Section I.** because of all "bodily injury," "property damage," "personal injury," and "advertising injury" arising out of any one "occurrence."

**E.** If the applicable Limits of Insurance of the policies listed in the Schedule of Underlying Insurance or of other insurance providing coverage to the "Insured" are reduced or exhausted by actual payment for one or more "claims" or "suits," then, subject to all applicable terms and conditions of this Policy, we will:

    **1.** in the event of reduction, pay in excess of the reduced underlying Limits of Insurance, or;

**2.** in the event of exhaustion, continue in force as "underlying insurance";

Coverage provided pursuant to **E.1.** or **E.2.** above will be subject to the exclusions, terms, and conditions of this Policy.

**F.** The Limits of Insurance of this Policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the Policy Period shown in the Declarations, unless the Policy Period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**G. Retained Limit**

Subject to the applicable Limits of Insurance stated in the Declarations and described in **A.** through **F.**, above, we will be liable only for that portion of damages that is in excess of the "retained limit." The "retained limit" is the greater of:

**1.** the total amounts stated as the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of all other insurance providing coverage to the "Insured" during the Policy Period; or

**2.** the amount stated in the Declarations as "Self-Insured Retention," as respects any "occurrence" covered by none of the underlying policies listed in the Schedule of Underlying Insurance and by no other insurance providing coverage to the "Insured" during the Policy Period.

Once the "Self-Insured Retention" has been fully exhausted by the Insured's actual payment of damages because of "claims" and "suits," the "Self-Insured Retention" will not be reapplied or again payable by the "Insured" because of any "bodily injury," "property damage," or offense that takes place or is committed during the Policy Period.

**III. DEFENSE**

**A.** We will have the right and duty to investigate any "claim" and defend any "suit" seeking damages covered by the terms and conditions of this Policy when:

**1.** the applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limit of Insurance of all other insurance providing coverage to the "Insured" have been exhausted by actual payment of "claims" for any "occurrence" to which this Policy applies; or

**2.** damages are sought for any "occurrence" which is covered by this Policy but covered by none of the underlying policies listed in the Schedule of Underlying Insurance and by no other insurance providing coverage to the "Insured."

**B.** When we assume the defense of any "claim" or "suit":

**1.** we will investigate any "claim" and defend any "suit" against the "Insured" seeking damages on account of any "occurrence" covered by this Policy. We have the right to investigate, defend, and settle the "claim" or "suit" as we deem expedient.

**2.** all expenses we incur in the investigation of any "claim" or defense of any "suit" are in addition to our Limits of Insurance.

GAI 6002 (Ed. 04/10) XS                    (Page 3 of 26)

3. we will pay the following as expenses, but only to the extent they are neither paid nor required to be paid by one or more of the underlying policies listed in the Schedule of Underlying Insurance nor by any other insurance providing coverage to the "Insured":

   a. premiums on bonds to release attachments, but only for bond amounts within our applicable Limit of Insurance. We are not obligated to apply for or furnish any such bond.

   b. premiums on appeal bonds required by law to appeal any "claim" or "suit" we defend, but only for bond amounts within our applicable Limit of Insurance. We are not obligated to apply for or furnish any such bond.

   c. all court costs taxed against the "Insured" in any "claim" or "suit" we defend. However, we will not pay for attorneys' fees or attorneys' expenses taxed against the "Insured."

   d. pre-judgment interest awarded against the "Insured" on that part of the judgment we pay that is within our applicable Limit of Insurance. If we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgment interest based on the period of time after the offer;

   e. all interest that accrues after entry of judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within our applicable Limit of Insurance;

   f. the "Insured's" actual and reasonable expenses incurred at our request.

C. We will not investigate any "claim" or defend any "suit" after our applicable Limits of Insurance have been exhausted by payment of judgments or settlements.

D. Except for those instances described in Subsection **A.** in **Section III. DEFENSE**, we will not be obligated to assume charge of the investigation, settlement, or defense of any "claim" or "suit" against the "Insured." We will, however, have the right and will be given the opportunity to participate in the settlement, defense, and trial of any "claim" or "suit" relative to any "occurrence" which, in our opinion, may create liability on our part under the terms of this Policy. If we exercise such right, we will do so at our own expense.

## IV.  EXCLUSIONS

This insurance does not apply to:

### A.  Asbestos

"Bodily injury," "property damage," "personal injury," "advertising injury," and any other liability, including, but not limited to, settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, or consultants, arising out of or related in any way, either directly or indirectly, to:

1. asbestos, asbestos products, asbestos-containing materials or products, asbestos fibers or asbestos dust, including, but not limited to, any manufacture, mining, use, sale, installation, removal, or distribution activities related to any form of asbestos;

2. exposure to, testing for, monitoring of, cleaning up, removing, containing, or treating of asbestos, asbestos products, asbestos-containing materials or products, asbestos fibers or asbestos dust; or

3. any obligation to investigate, settle, or defend, or indemnify any person against, any "claim" or "suit" arising out of, or related in any way, either directly or indirectly, to asbestos, asbestos products, asbestos-containing materials or products, asbestos fibers or asbestos dust.

**B. Breach of Contract**

"Personal injury" or "advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement."

**C. Criminal Acts**

"Personal injury" or "advertising injury" arising out of a criminal act committed by or at the direction of the "Insured."

**D. Damage to Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

1. a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

2. a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**E. Damage to Property**

"Property damage" to:

1. property you own, rent, or occupy, including any costs or expenses incurred by you or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

2. premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

3. property loaned to you;

4. personal property in the care, custody or control of the "Insured";

5. that particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

6. that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **2.** of this exclusion does not apply if the premises are "your work" and were never occupied, rented, or held for rental by you.

GAI 6002 (Ed. 04/10) XS                    (Page 5 of 26)

Paragraphs **3.**, **4.**, **5.**, and **6.** of this exclusion do not apply to liability assumed under a railroad sidetrack agreement.

Paragraph **6.** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**F. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**G. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**H. Distribution Of Material In Violation Of Statutes**

"Bodily injury," "property damage," "personal injury" or "advertising injury" arising, directly or indirectly, out of any act or omission that violates or is alleged to violate:

**1.** the Telephone Consumer Protection Act (TCPA), including any amendment of or addition to that law, by the sending or transmitting of a fax or the placing of a phone call;

**2.** the CAN-SPAM Act of 2003, including any amendment of or addition to that law, by the sending or transmittal of an email; or

**3.** the Fair Credit Reporting Act (FCRA), and any such amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**4.** any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**I. Electronic Chat Rooms or Bulletin Boards**

"Personal injury" or "advertising injury" arising out of an electronic chat room, bulletin board, website, social networking site or service, or blog the "Insured" hosts or owns, or over which the "Insured" exercises control.

**J. Electronic Data**

"Bodily injury," "property damage," "personal injury" or "advertising injury" arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data."

**K. Employment-Related Practices**

"Bodily injury", "personal injury," or "advertising injury," however caused, arising directly or indirectly out of any:

**1.** refusal to employ or promote;

2. termination of employment;

3. coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, molestation, humiliation, discrimination, or malicious prosecution, directed at a person, or other employment-related practice, policy, act, or omission; or

4. consequential "bodily injury," "property damage," "personal injury," or "advertising injury," as a result of paragraphs **1.** through **3.** of this exclusion.

This exclusion applies whether the injury-causing event described in paragraphs **1.** through **4.** occurs before employment, during employment, or after employment of that person, and whether the "Insured" may be held liable as an employer or in any other capacity, and to any obligation to share damages with or to repay someone else who must pay damages because of the "bodily injury," "property damage," "personal injury," or "advertising injury."

**L. ERISA**

Any obligation of the "Insured" under the Employee Retirement Income Security Act of 1974 (ERISA) or, any amendment to this act, or under any similar law, regulation, or ordinance.

**M. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "Insured." This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**N. Infringement of Copyright, Patent, Trademark or Trade Secret**

"Personal injury" or "advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement."

**O. Knowing Violation of Rights of Another**

"Personal injury" or "advertising injury" caused by or at the direction of the "Insured" with the knowledge that the act would violate the rights of another and would inflict "personal injury" or "advertising injury."

**P. Material Published Prior to Policy Period**

"Personal injury" or "advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the Policy Period.

**Q. Material Published with Knowledge of Falsity**

"Personal injury" or "advertising injury" arising out of oral or written publication of material, if done by or at the direction of the "Insured" with knowledge of its falsity.

**R. Nuclear Energy Liability**

1. "Bodily injury," "property damage," "personal injury," "advertising injury," or "nuclear property damage," however caused:

**a.** with respect to which an "Insured" under this Policy is also insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors, or would be insured under any such policy but for its termination upon exhaustion of its Limit of Liability; or

**b.** resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** any "Insured" is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**2.** "Bodily injury," "property damage," "personal injury," "advertising injury," or "nuclear property damage," however caused, arising or resulting from, directly or indirectly, the "hazardous properties" of "nuclear material," if:

**a.** the "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, any "Insured" or **(b)** has been discharged or dispersed therefrom;

**b.** the "nuclear material" is contained in "spent fuel" or "nuclear waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of any "Insured"; or

**c.** the "bodily injury," "property damage," "personal injury," "advertising injury," or "nuclear property damage" arises out of the furnishing by an "Insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **2.c.** applies only to "property damage" to such "nuclear facility" and any property in or at that "nuclear facility."

**3.** As used in this Nuclear Energy Liability exclusion:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material," "special nuclear material" or "by-product material."

"Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

"Nuclear waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

**a.** any "nuclear reactor";

**b.** any equipment or device designed or used for **(a)** separating the isotopes of uranium or plutonium, **(b)** processing or utilizing "spent fuel," or **(c)** handling, processing or packaging "nuclear waste";

**c.** any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of any "Insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**d.** any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "nuclear waste"; and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Nuclear property damage" includes all forms of radioactive contamination of tangible property.

**S.  Pollution**

**1.** Any "bodily injury," "property damage," "personal injury," "advertising injury," and any other liability, including, but not limited to, settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, or consultants, arising out of or related in any way, either directly or indirectly, in whole or in part, to the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape, presence of, or exposure to, any "pollutant," from any source, at any location, at any time.

**2.** Any loss, cost, or expense which would not have occurred in whole or in part but for any:

**a.** Request, demand, or order that any "Insured" or others test for, monitor, clean up, remove, contain, treat, detoxify, abate, or neutralize, or in any way respond to or assess the effects of, any "pollutant"; or

**b.** "Claim" or "suit" by or on behalf of any federal, state, or local governmental authority because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, abating, or neutralizing, or in any way responding to or assessing the effects of, any "pollutant."

This exclusion does not apply to "bodily injury" or "property damage" caused by smoke, fumes, vapor, or soot from a "hostile fire," or sustained within a building and caused by smoke, fumes, vapor, or soot from equipment used to heat that building.

"Hostile fire" means a fire that becomes uncontrollable or breaks out from where it was intended to be.

**T.  Quality or Performance of Goods - Failure to Conform to Statements**

"Personal injury" or "advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement."

**U.  Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1.  "your product";

2.  "your work"; or

3.  "impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**V.  Unauthorized Use of Another's Name or Product**

"Personal injury" or "advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactic to mislead another's potential customers.

**W.  Un-Insured/Under-Insured Motorists and Similar Laws**

Any obligation of the "Insured" under a No Fault, Uninsured Motorist or Underinsured Motorist law, or under any similar law, regulation or ordinance.

**X.  War**

"Bodily injury," "property damage," "personal injury," or "advertising injury," however caused, arising directly or indirectly out of:

1.  war, including undeclared or civil war;

2.  warlike action by military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

3.  insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**Y.  Workers' Compensation And Similar Laws**

Any obligation of the "Insured" under a Workers Compensation, Unemployment Compensation or, Disability Benefits Law, or under any similar law, regulation, or ordinance.

**Z.  Wrong Description of Prices**

"Advertising injury" arising out of the wrong description of the pricing of goods, products or services stated in your "advertisement."

**AA.  Following Form**

The following exclusions 1. through 6. do not apply to the extent that such coverage is provided by "underlying insurance" or would have been provided by "underlying insurance" but for the exhaustion of the applicable limits of the "underlying insurance" by the payment of damages for "bodily injury," "property damage," "personal injury," or "advertising injury" covered

by our Policy. However, under no circumstances will the coverage provided by our Policy for the risks described in the following exclusions 1. through 6. be any broader than the coverage provided for those risks by the "underlying insurance."

Subject to the preceding paragraph, this insurance does not apply to:

**1. Aircraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, operation, use, or "loading or unloading" of any aircraft, if such aircraft is owned, or hired without pilot or crew, by or on behalf of any "Insured."

**2. Auto**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, operation, use, or "loading or unloading" of any "auto."

**3. Contractual Liability**

"Bodily injury," "property damage," "personal injury" or "advertising injury" for which any "Insured" is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**a.** that the "Insured" would have in the absence of the contract or agreement; or

**b.** assumed in a written contract or written agreement that is an "Insured contract," but only if the "bodily injury," "property damage," "personal injury" or "advertising injury" occurs after the "Insured" signs or otherwise formally executes that contract or agreement.

**4. Employee Liability**

Liability of any "employee" with respect to "bodily injury," "property damage," "personal injury" or "advertising injury" to you or to another "employee" of the same employer injured in the course of such employment.

**5. Employer's Liability**

**a.** "Bodily injury" to:

**(1)** an "employee" of any "Insured," arising out of and in the course of:

**(a)** employment by any "Insured"; or

**(b)** performing duties related to the conduct of any "Insured's" business; or

**(2)** the spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a. (1)** of this exclusion.

**b.** This exclusion applies:

**(1)** whether any "Insured" may be liable as an employer or in any other capacity; and

**(2)** to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**6. Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, operation, use, or "loading or unloading" of any watercraft, if such watercraft is owned, or chartered without crew, by or on behalf of any "Insured."

This exclusion does not apply to watercraft while ashore on any premises owned by, rented to, or controlled by you.

## V.  DEFINITIONS

**A.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**1.** notices that are published include material placed on the Internet or on similar electronic means of communication;

**2.** regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**B.** "Advertising injury" means injury, including consequential "bodily injury," arising out of advertising activities of any "Insured" as a result of one or more of the following offenses committed during the Policy Period in the course of advertising your goods, products, or services:

**1.** oral or written publication, in any manner, that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**2.** oral or written publication, in any manner, of material that violates a person's right of privacy;

**3.** misappropriating another's advertising ideas in your "advertisement"; or

**4.** infringing upon another's copyright, trade dress, or slogan in your "advertisement."

"Advertising injury" does not include "personal injury."

**C.** "Auto" means:

**1.** a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**2.** any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment."

**D.** "Bodily injury" means physical injury, sickness, or disease sustained by a person, including death resulting from any of those at any time. "Bodily injury" also means mental injury, mental anguish, humiliation, or shock sustained by a person, if directly resulting from a physical injury, sickness, or disease of that person.

**E.** "Claim" means a demand, made under an assertion of legal right, for money as compensation for "bodily injury," "property damage," "advertising injury," or "personal injury." "Claim" includes "suit."

GAI 6002 (Ed. 04/10) XS                    (Page 12 of 26)

**F.** "Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, hardware, or media, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**G.** "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

**H.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**I.** "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

  **1.** it incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

  **2.** you have failed to fulfill the terms of a contract or agreement;

  if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

  "Impaired property" does not include "electronic data."

**J.** "Insured" means each of the following, to the extent set forth:

  **1.** The Named Insured meaning:

    **a.** any person or organization listed in Item **1.** of the Declarations, and any Company of which you own more than 50% as of the beginning of the Policy Period.

    **b.** any organization you newly acquire or form during the Policy Period, other than a partnership, joint venture or limited liability company, and of which you maintain ownership of more than 50%, will qualify to be a Named Insured. However:

      **(1)** coverage for such an organization under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the Policy Period, whichever is earlier;

      **(2)** coverage under this provision does not apply to any "bodily injury," "property damage," "personal injury" or "advertising injury" that occurred before you acquired or formed the organization; and

      **(3)** coverage under this provision applies only if the organization is insured under one or more of the policies listed in the Schedule of Underlying Insurance, and then for no broader coverage than is provided for that organization under such underlying policies.

  **2.** If you are an individual:

    **a.** you and your spouse, but only with respect to the conduct of a business of which you are the sole owner as of the beginning of the Policy Period.

    **b.** any person or organization having proper temporary custody of your property if you die, but only:

      **(1)** with respect to liability arising out of the maintenance or use of that property; and

**(2)** until your legal representative has been appointed; and

**c.** your legal representative if you die, but only with respect to duties as such. That representative will have all of your rights and duties under this insurance.

3. If you are a partnership or joint venture, your partners or members and their spouses, but only as respects the conduct of your business.

4. If you are a limited liability company, your members and your managers, but only as respects the conduct of your business.

5. If you are a trust, you are an "Insured." Your trustees are also "Insureds," but only with respect to their duties as your trustees.

6. Any person or organization, other than a Named Insured, included as an additional "Insured" by virtue of an "insured contract" or a contract that includes an "insured contract," and to which coverage is provided by the "underlying insurance," but for no broader coverage under this Policy than the coverage the "underlying insurance" provides for such additional "Insured."

7. Subject to **12.**, below, any of your "executive officers" or directors (if you are an organization other than a partnership, joint venture, or limited liability company) and any of your "employees," but only while acting within the scope of their duties as such. Your stockholders (if you are an organization other than a partnership, joint venture, or limited liability company) are also "Insureds," but only with respect to their liability as your stockholders. But no person or organization that is an "Insured" solely by virtue of this subparagraph is an "Insured" as respects any:

   **a.** "bodily injury" or "property damage" arising out of the ownership, maintenance, use, or "loading or unloading" of any "auto," aircraft or watercraft.

   However, if valid "underlying insurance" affords such coverage for that person or organization, or would have afforded such coverage but for the exhaustion of underlying limits for "bodily injury" or "property damage," then, subject to all the other terms and conditions of our Policy, that person or organization is also an "Insured" under our Policy as respects **a.** In that case, the coverage our Policy provides that person or organization for **a.** will follow the provisions, exclusions, and limitations of, and be no broader than, the coverage that "underlying insurance" provides that person or organization for **a.**

8. Subject to **12.**, below your "volunteer workers," but only while performing duties related to the conduct of your business.

9. Any person or organization, other than one of your "employees," while acting as your real estate manager.

10. Any person or organization (other than your partners, "executive officers," directors, stockholders or "employees") with respect to any "auto" owned by you, loaned to you, or hired by you or on your behalf, and used by that person or organization with your permission. But no person or organization that is an "Insured" solely by virtue of this subparagraph is an "Insured" as respects using an "auto" while working in a business that sells, services, repairs, or parks "autos" unless you are in that business.

11. No person or organization is an "Insured" with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations or unless added via endorsement to this Policy.

12. None of your "employees" or "volunteer workers" is an "Insured" as respects any:

    a. "Bodily injury," "personal injury" or "advertising injury":

      (1) to you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

      (2) to the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of paragraph **a. (1)** above;

      (3) for which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraph **a.(1)** or **a.(2)** above; or

    b. "Property damage" to property:

      (1) owned, occupied, or used by,

      (2) rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

    you, any of your "employees" or "volunteer workers," any of your partners or members (if you are a partnership or joint venture), or any of your members (if you are a limited liability company).

**K.** "Insured contract" means:

1. a contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you, or while temporarily occupied by you with permission of the owner, is not an "insured contract";

2. a sidetrack agreement;

3. any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

4. an obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5. an elevator maintenance agreement;

6. that part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury," "property damage," "personal injury" or "advertising injury" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

    Paragraph **6.** does not include that part of any contract or agreement:

GAI 6002 (Ed. 04/10) XS                    (Page 15 of 26)

    **a.** that indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

    **b.** that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

        **(1)** preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

        **(2)** giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

    **c.** under which the "Insured," if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the "Insured's" rendering or failure to render professional services, including those listed in **b.** above and supervisory, inspection, architectural or engineering activities.

**L.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

**M.** "Loading or unloading" means the handling of property:

    **1.** after it is removed from the place where it is accepted for movement into or onto an aircraft, watercraft, or "auto";

    **2.** while it is in or on an aircraft, watercraft, or "auto";

    **3.** while it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered.

However, "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft, or "auto."

**N.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    **1.** bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **2.** vehicles maintained for use solely on or next to premises you own or rent;

    **3.** vehicles that travel on crawler treads;

    **4.** vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        **a.** power cranes, shovels, loaders, diggers or drills; or

        **b.** road construction or resurfacing equipment such as graders, scrapers or rollers;

    **5.** vehicles not described in paragraphs **1.**, **2.**, **3.**, or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   **a.** air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   **b.** cherry pickers and similar devices used to raise or lower workers;

**6.** vehicles not described in **1.**, **2.**, **3.**, or **4.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**a.** equipment designed primarily for:

   **(1)** snow removal;

   **(2)** road maintenance, but not construction or resurfacing; or

   **(3)** street cleaning;

**b.** cherry pickers and similar devices mounted on auto or truck chassis and used to raise or lower workers; and

**c.** air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos."

**O.** "Occurrence" means:

**1.** as respects "bodily injury" or "property damage," an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general harmful conditions will be deemed to arise out of one "Occurrence";

**2.** as respects "personal injury," an offense, arising out of your business, that results in "personal injury," but only if that offense is committed during the Policy Period. All "personal injury" that arises from the same offense, or from repeated or related offenses, will be considered as arising out of one and the same "occurrence," regardless of the frequency or repetition thereof, the number or kinds of media, or the number of people or organizations making "claims" or bringing "suits";

**3.** as respects "advertising injury," an offense, committed in the course of advertising your goods, products and services, that results in "advertising injury," but only if that offense is committed during the Policy Period. All "advertising injury" that arises from the same offense, or from repeated or related offenses, will be considered as arising out of one and the same "occurrence," regardless of the frequency or repetition thereof, the number or kinds of media used, or the number of people or organizations making "claims" or bringing "suits."

**P.** "Personal injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses committed during the Policy Period:

**1.** false arrest, detention or imprisonment;

GAI 6002 (Ed. 04/10) XS                              (Page 17 of 26)

2.   malicious prosecution;

3.   the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4.   oral, or written publication, in any manner, that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

5.   oral or written publication, in any manner, that violates a person's right of privacy.

"Personal injury" does not include "advertising injury."

Q.   "Pollutant" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

R.   "Pollution cost or expense" means any loss, cost or expense arising out of any:

1.   request, demand, order or statutory or regulatory requirement that any "Insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, abate, or in any way respond to or assess the effects of, any "pollutant"; or

2.   "claim" or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, abating, or in any way responding to or assessing the effects of, any "pollutant."

S.   "Products-completed operations hazard":

1.   Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

a.   products that are still in your physical possession; or

b.   work that has not yet been completed or abandoned.

"Your work" will be deemed completed at the earliest of the following times:

(1)   when all of the work called for in your contract has been completed.

(2)   when all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(3)   when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

2.   Does not include "bodily injury" or "property damage" arising out of:

a.   the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any "Insured";

**b.** the existence of tools, uninstalled equipment or abandoned or unused materials.

**T.** "Property damage" means:

**1.** physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

**2.** loss of use of tangible property that is not physically injured. All such loss will be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

**U.** "Self-Insured Retention" means the dollar amount listed in Item **5.** of the Declarations that will be paid by the "Insured" before this insurance becomes applicable, with respect to "occurrences" or offenses not covered by "underlying insurance." The "Self-Insured Retention" does not apply to "occurrences" or offenses which would have been covered by "underlying insurance" but for the exhaustion of applicable limits of the "underlying insurance."

**V.** "Suit" means a civil proceeding which seeks monetary damages because of "bodily injury," "property damage," "personal injury," or "advertising injury" to which this insurance applies. "Suit" includes:

**1.** an arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

**2.** any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

**W.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**X.** "Underlying insurance" means the insurance coverage provided under policies shown in the Schedule of Underlying Insurance, or any additional policies agreed to by us in writing. It includes any policy issued to replace one of those policies during the term of this insurance that provides:

**1.** at least the same policy limits; and

**2.** insurance for the same hazards, except as to any modifications which are agreed to by us in writing.

"Underlying insurance" does not include any insurance policy specifically purchased to apply only in excess of this Policy.

**Y.** "Volunteer worker" means a person who is not your "employee," and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary, or other compensation by you or anyone else for their work performed for you.

**Z.** "Your product" means:

**1.** any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**a.** you;

    **b.** others trading under your name; or

    **c.** a person or organization whose business or assets you have acquired; and

**2.** containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

**1.** warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**2.** the providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**AA.** "Your work" means:

**1.** work or operations performed by you or on your behalf; and

**2.** materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

**1.** warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**2.** the providing of or failure to provide warnings or instructions.

## VI.  CONDITIONS

### A.  Appeals

If the "Insured" or an "Insured's" underlying insurers do not appeal an award or judgment in excess of the "retained limit," we have the right to make such an appeal. Whether or not we elect to appeal, and regardless of the result of any appeal we elect to make, the amount we pay in connection with such an award or judgment will not exceed our applicable Limit of Insurance, as stated in Item **4.** of the Declarations plus expenses we incur in the defense of the "suit."

### B.  Audit

We may audit and examine your books and records as they relate to this Policy or the premium to be charged, at any time during the Policy Period of this Policy and for up to three years after the end of that Policy Period.

### C.  Bankruptcy or Insolvency

The bankruptcy, insolvency or inability to pay of any "Insured," or the bankruptcy, insolvency or inability to pay of any of the Underlying Insurers, will not relieve us from the payment of any "claim" or "suit" covered by this Policy. Under no circumstances will any such bankruptcy, insolvency or inability to pay require us to drop down and replace the "retained limit" or to bear or assume any obligation within the "retained limit."

**D. Cancellation**

1.  You may cancel this Policy before the end of the Policy Period. To do so, you must mail or deliver advance written notice to us stating the day and hour the cancellation takes effect.

2.  We may cancel this Policy before the end of the Policy Period. If we cancel because of nonpayment of premium, we must mail or deliver advance written notice to you stating when, not less than ten (10) days thereafter, the cancellation takes effect. If we cancel for any other reason, we must mail or deliver advance written notice to you stating when, not less than thirty (30) days thereafter, the cancellation takes effect. Mailing that notice to you at your mailing address shown in Item **1.** of the Declarations will be sufficient notice of cancellation, and proof of such mailing will be sufficient proof of notice.

3.  If you or we cancel, the Policy Period ends when the cancellation takes effect.

4.  If we cancel, final premium will be calculated pro rata based on the time this Policy was in force. Final premium will not be less than the Minimum Premium shown in Item **3.** of the Declarations.

5.  If you cancel, final premium may be more than pro rata; it will be based on the time this Policy was in force and may be increased by our short rate cancellation table and procedure. Final premium will not be less than the Minimum Premium shown in Item **3.** of the Declarations.

6.  Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

7.  The first Named Insured in Item **1.** of the Declarations will act on behalf of all other "Insureds" with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this Policy.

8.  Any of these provisions that conflicts with an applicable law that controls the cancellation of this Policy is changed by this statement to comply with the minimum mandatory requirements of that law.

**E. Changes**

This Policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in Item **1.** of the Declarations is authorized to act on behalf of all Insureds in making or agreeing to changes in the terms of this Policy, but only with our consent. Notice to our agent, or knowledge possessed by our agent or any other person, will not effect a waiver or a change in any part of this Policy. This Policy can be changed only by a written endorsement we issue that becomes a part of this Policy and that is signed by one of our authorized representatives.

**F. Duties in The Event of An "Occurrence," "Claim" Or "Suit"**

1.  You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a "claim" or "suit" involving this Policy. To the extent possible, such notice should include:

    a.  how, when and where the "occurrence" took place;

**b.** the names and addresses of any injured person and witnesses;

**c.** the nature and location of any injury or damage arising out of the "occurrence."

**2.** If a "claim" or "suit" against any "Insured" is reasonably likely to involve this Policy you must notify us in writing as soon as practicable.

**3.** You and any other involved "Insured" must:

**a.** immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

**b.** authorize us to obtain records and other information;

**c.** cooperate with us in the investigation, settlement or defense of the "claim" or "suit"; and

**d.** assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "Insured" because of injury or damage to which this insurance may also apply.

**4.** No "Insured" will voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent, except at their own cost.

## G. Inspection

We have the right, but are not obligated, to inspect the premises and operations of any "Insured" at any time. Our inspections are not safety inspections. They relate only to the insurability of the premises and operations of the "Insured" and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While such inspections may help reduce losses, we do not undertake to perform the duty of any person or organization to provide for the health or safety of any employees or the public. We do not warrant that the premises or operations of any "Insured" are safe or healthful or that they comply with laws, regulations, codes or standards.

## H. Legal Actions Against Us

There will be no right of action against us under this Policy unless:

**1.** you and any other involved "Insured" have complied with all the terms of this Policy; and

**2.** the amount you owe has been determined, either by settlement with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a party in an action against you to determine your liability.

## I. Knowledge of "Occurrence"

Knowledge of any "occurrence," "claim," or "suit" by any agent, servant, or employee of the "Insured" does not in and of itself constitute knowledge by the "Insured" unless notice of such "occurrence," "claim," or "suit" has been received by an officer, manager, risk manager, authorized employee, or partner of a Named Insured.

**J. Maintenance of "Underlying Insurance"**

During the period of this Policy, you agree:

1. to keep the policies listed in the Schedule of Underlying Insurance in full force and effect;

2. that no renewal or replacement of any policy listed in the Schedule of Underlying Insurance will be more restrictive in coverage than the policy it renews or replaces;

3. that the Limits of Insurance of the policies listed in the Schedule of Underlying Insurance will be maintained except for any reduction or exhaustion of aggregate limits by actual payment of "claims" or "suits" for "occurrences" covered by "underlying insurance"; and

4. that the terms, conditions and endorsements of the policies listed in the Schedule of Underlying Insurance will not change during the Policy Period of this Policy in any way that:

   a. increases the coverage afforded under this Policy; or

   b. causes the applicable Limits of Insurance of the policies listed in the Schedule of Underlying Insurance or of other insurance providing coverage to the "Insured" to be reduced or exhausted at an earlier time than they would have been reduced or exhausted in the absence of such change.

If you fail to comply with any one or more of these requirements, we will be liable only to the same extent we would have been had you fully complied with all of these requirements.

**K. Nonrenewal**

If we decide not to renew this Policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the end of the Policy Period. If notice is mailed, proof of mailing will be sufficient proof of notice.

**L. Other Insurance**

If other insurance applies to a liability that is also covered by this Policy, this Policy will apply only in excess of the applicable limits of that other insurance. Nothing in this provision will be construed to make this Policy subject to the terms, conditions and limitations of such other insurance. However, this provision will not apply if the other insurance is specifically written to apply only in excess of the applicable Limits of Liability of this Policy.

**M. Policy Period**

Subject to Condition **D. Cancellation**, the Policy Period of this Policy:

1. begins at the date and time shown as From; and

2. ends at the date and time shown as To;

in Item **2.** of the Declarations.

**N. Premium**

The first Named Insured designated in Item **1.** of the **Declarations** will be responsible for payment of all premiums when due.

The premium for this Policy will be computed on the basis set forth in Item **3.** of the

GAI 6002 (Ed. 04/10) XS                    (Page 23 of 26)

Declarations. At the beginning of the Policy Period, you must pay us the Advance Premium shown in Item 3. of the Declarations.

When this Policy expires or if it is canceled, we will compute the earned premium for the time this Policy was in force. If this Policy is subject to audit adjustment, the actual exposure basis will be used to compute the earned premium. If the earned premium is greater than the Advance Premium, you will promptly pay us the difference. If the earned premium is less than the Advance Premium, we will return the difference to you. But in any event we will retain the Minimum Premium as shown in Item **3.** of the Declarations for each twelve months of our Policy Period.

**O.  Separation of Insureds**

Except with respect to our Limits of Insurance and any rights or duties specifically assigned to the first Named Insured designated in Item **1.** of the Declarations, this insurance applies:

 **1.** as if each Named Insured were the only Named Insured; and

 **2.** separately to each "Insured" against whom "claim" is made or "suit" brought.

**P.  Trade Sanctions**

This Policy is void from its inception as respects any Policy term or condition that violates any law or regulation of the United States of America (U.S.) concerning economic and trade embargoes including, but not limited to, such laws or regulations respecting any of the following:

 **1.** any "Insured," or any person or entity claiming the benefits of an "Insured," who is or becomes a "Specially Designated National" or "Blocked Person" who is otherwise subject to the economic sanctions of the U.S.;

 **2.** any "claim" or "suit" that is brought in a "Sanctioned Country" or by the government of a "Sanctioned Country," where any action in connection with such "claim" or "suit" is prohibited by U.S. economic or trade sanctions;

 **3.** any "claim" or "suit" that is brought by any "Specially Designated National," "Blocked Person," or any person or entity who is otherwise subject to U.S. economic or trade sanctions;

 **4.** property that is located in a "Sanctioned Country" or that is owned by, rented to or in the care, custody or control of a "Sanctioned Country" government, where any activities related to such property are prohibited by U.S. economic or trade sanctions;

 **5.** property that is owned by, rented to or in the care, custody, or control of a "Specially Designated National," "Blocked Person," or any person or entity who is otherwise subject to U.S. economic or trade sanctions.

As used in this Policy a "Specially Designated National" or "Blocked Person" is any person or entity that is on the list of "Specially Designated Nationals" and "Blocked Persons" issued by the United States Treasury Department's Office of Foreign Asset Control (O.F.A.C.) as it may be amended from time to time.

As used in this Policy a "Sanctioned Country" is any country that is the subject of trade or economic embargoes imposed by the laws of the U.S.

**Q. Transfer of Rights of Recovery Against Others to Us**

If any "Insured" has rights to recover all or part of any payment we have made under this Policy, those rights are transferred to us. The "Insured" must do nothing after loss to impair those rights and must help us enforce them. At our request, the "Insured" will bring "suit" or transfer those rights to us and help us enforce them.

Any recoveries will be applied as follows:

1. any interests, including the "Insured," that have paid an amount in excess of our payment under this Policy will be reimbursed first;

2. we then will be reimbursed up to the amount we have paid; and

3. lastly, any interests, including the "Insured," over which our insurance is excess, are entitled to claim the residue.

Expenses incurred in the exercise of rights of recovery will be apportioned between the interests, including the "Insured," in the ratio of their respective recoveries as finally settled.

**R. Terms Conformed to Statute**

The terms of this Policy which are in conflict with the statutes of the state where this Policy is issued are amended to conform to the minimum mandatory requirements of such statutes.

If we are prevented by law or statute from paying on behalf of an "Insured," then we will, where permitted by law or statute, indemnify the "Insured" for those sums in excess of the "retained limit."

**S. Titles and Headings**

Headings and titles contained in this Policy are for purposes of organization and reference only. They do not, and shall not be deemed to, control or affect the meaning or construction of any provision of this Policy.

**T. Transfer of Your Rights And Duties**

No "Insured" may transfer any of its rights or duties under this Policy without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. However, notice of cancellation sent to the first Named Insured designated in Item **1.** of the Declarations and mailed to the address shown in this Policy will be sufficient notice to effect cancellation of this Policy, even if you have died or been legally declared bankrupt.

**U. Unintentional Failure to Disclose Hazards**

An "Insured's" failure to disclose all hazards existing as of the inception date of this Policy will not prejudice that "Insured's" insurance with respect to the coverage afforded by this Policy, provided such failure is both:

a. not intentional on the part of that "Insured" and

**b.** reported to us as soon as practicable after its discovery by any Named Insured.

**V. When Loss Is Payable**

Coverage under this Policy does not apply unless and until the "Insured" or its underlying insurer is obligated to pay the "retained limit."

When the amount of loss has finally been determined, we will promptly pay on behalf of the "Insured" the amount of loss covered under the terms of this Policy.

We may, at our sole discretion, advance on behalf of an "Insured" sums within the "Self-Insured Retention" in order to effect settlement of a "claim" or "suit." If we do so, you will promptly reimburse us for any such amount we advance on behalf of any "Insured."



Administrative Offices
301 E 4th Street
Cincinnati, Ohio 45202-4201
513-369-5000 ph

**GAI 6003
(Ed. 06 97)**

SCHEDULE A—SCHEDULE OF UNDERLYING INSURANCE

| Carrier, Policy Number and Period | Type of Coverage | Limits of Insurance (THE LIMITS LISTED BELOW ARE THE MINIMUM LIMITS REQUIRED AND MAY BE HIGHER) |
|---|---|---|
| It is warranted by the Certificate Holder that any carrier for underlying insurance in force, or at renewal or replacement thereof, will be rated A – VI or better by A.M. Best and that the underlying insurance provides supplementary payments that do not reduce the limits of insurance | General Liability | $1,000,000 Each Occurrence INCLUDED Personal & Advertising Injury INCLUDED Products/Completed Operations Aggregate $2,000,000 General Aggregate |
| IF ANY - It is warranted by the Certificate Holder that any carrier for underlying insurance in force, or at renewal or replacement thereof, will be rated A –VI or better by A.M. Best and that the underlying insurance provides supplementary payments that do not reduce the limits of insurance | Auto Liability | $1,000,000 Combined Single Limit Per Individual Schedule Automobile Symbols |
| IF ANY - It is warranted by the Certificate Holder that any carrier for underlying insurance in force, or at renewal or replacement thereof, will be rated A –VI or better by A.M. Best | Employee Benefits Liability | $1,000,000 Each Claim/Occurrence $1,000,000 Aggregate |
| IF ANY - It is warranted by the Certificate Holder that any carrier for underlying insurance in force, or at renewal or replacement thereof, will be rated B++ –VI or better by A.M. Best and that the underlying insurance provides supplementary payments that do not reduce the limits of insurance | Employers Liability* | $500,000 Each Accident $500,000 Each Employee – Disease $500,000 Policy Limit – Disease |
| IF ANY - It is warranted by the Certificate Holder that any carrier for underlying insurance in force, or at renewal or replacement thereof, will be rated A –VI or better by A.M. Best and that the underlying insurance provides supplementary payments that do not reduce the limits of insurance | Liquor Liability | $1,000,000 Each Claim Limit $1,000,000 Aggregate Limit |
| IF ANY - It is warranted by the Certificate Holder that any carrier for underlying insurance in force, or at renewal or replacement thereof, will be rated A –VI or better by A.M. Best and that the underlying insurance provides supplementary payments that do not reduce the limits of insurance | Garagekeepers Legal Liability | $1,000,000 Each Loss |

*State Funds for Employers Liability is acceptable.

GAI 6003 (06/97)                        Page 1 of 1

**GAI 6341**
**(Ed. 06 97)**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**LIMITATION OF COVERAGE TO SPECIFIED LOCATIONS ENDORSEMENT**

The policy applies only to liability arising out of:

A. An "insured's" operation at the premise(s) listed below

    1. Covered locations listed on the Select Hospitality Insurance Group, Inc purchasing group member's individual Certificate of Coverage.

or

B. any premise(s) newly acquired by the insured, if such acquisition is reported to us within 30 days of the acquisition of such ownership or control by any "insured" from a prior owner that is not an "insured"

This endorsement does not change any other provision of the policy.

GAI 6341 (06/97)                    Page 1 of 1

GREAT**AMERICAN**®
INSURANCE GROUP

Administrative Offices
301 E 4th Street
Cincinnati, Ohio 45202-4201
Tel: 1-513-369-5000

GAI 7241 (Ed. 07 12)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## RISK PURCHASING GROUP ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

The following is added to Section **II. LIMITS OF INSURANCE**:

**Limits For Certificate of Coverage**

The Limits of Insurance of this policy apply individually to each certificate of coverage issued to members of **Select Hospitality Insurance Group, Inc.**

The following are added to Section **IV. EXCLUSIONS**:

**Real Property Construction or Development**

Any liability or loss, cost or expense arising out of:

**1.** the development, construction or demolition of real property; or

**2.** the "structural alteration" or addition of real property.

This exclusion applies to work performed solely by the "Insured" on the "Insured's" property.

As used in this endorsement, "structural alteration" means work or operations affecting the structural integrity of real property, but is not repairs, maintenance, or renovations that do not affect the structural integrity of real property.

**Earthquake or Flood Coverage Omission**

Any failure or omission on the part of the "Insured" or the "Insured's" agent(s) to obtain, effect, maintain or adhere to any policies of insurance which provide coverage for damage due to earthquake or flood perils.

**Builder, Developer or Sponsor Wrongful Act**

Any "wrongful act" which is directly or indirectly related in whole or in part to a builder, developer or sponsor or anyone affiliated with a builder, developer or sponsor. This exclusion shall not apply to claims while such an "Insured" is a member on the "Insured's" board of directors and in the capacity as such.

As used in this endorsement, "wrongful act" means any actual or alleged error, misstatement, misleading statement, act or omission, neglect or breach of duty.

**Swimming Pools**

Any "bodily injury," "personal injury," "advertising injury" or medical payments arising out of the ownership, maintenance, operation or use of a swimming pool unless 1) if outdoors, the swimming pool is fenced with a self-closing or self-latching gate; or 2) if indoors or on a roof-top, restricted access is through a self-closing and self-locking door; and 3) the swimming pool's design or operation complies with the Virginia Graeme Baker Act. With respect 1, 2 and 3 above, the swimming pool must meet or exceed all federal, state or local governing codes and regulations.

The following are added to Section **IV. EXCLUSIONS - AA. Following Form**:

**Bodily Injury or Property Damage**

"Bodily injury" or "property damage".

**Care, Custody, or Control Exclusion - Real and Personal Property with Garagekeepers Legal Liability**

"Property damage" to real or personal property in the care, custody or control of any "Insured," or loaned to any "Insured," or used, rented or occupied by any "Insured," or which any "Insured" is for any purpose exercising physical control.

**Discrimination against Non-Employees**

"Bodily injury," "property damage," "personal injury" or "advertising injury" arising out of any "claim" or "suit" based upon or alleging "discrimination" against any non-employee unless insurance for "discrimination" is prohibited by law.

As used in this endorsement, "discrimination" includes discrimination on the basis of age, disability, ethnic origin, marital status, physical or mental hardship, race, religious affiliation and sex or sexual orientation.

If any coverage is afforded by this section such coverage will only apply to "discrimination" based on disparate impact or vicarious liability.

The following are added to Section **VI. CONDITIONS**:

**Policy Period**

It is agreed that the policy period shown on the individual certificate of coverage is the period that insurance is in force for that individual certificate holder, regardless of the policy period of this policy. However, the expiration date on the individual certificate of coverage shall not be a later date than the expiration date of this policy.

**Amendments Attached to Certificate of Coverage**

It is agreed that if any exclusions, restrictions or amendments of coverage are shown on the certificate of coverage issued to an individual "Insured," then that exclusion, restriction or amendment shall be deemed part of this policy as respects that individual "Insured".

**This endorsement does not change any other provision of the policy.**

GAI 7241 (Ed. 07/12)                                   (Page 2 of 2)

**GREATAMERICAN**
**INSURANCE GROUP**

Administrative Offices
301 E 4th Street
Cincinnati OH 45202-4201
513 369 5000 ph

GAI 7235 (Ed. 06 13)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CRISIS RESPONSE COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

**Schedule**

| Crisis Response Coverage | Limit of Insurance |
| --- | --- |
| Crisis Response Aggregate Limit | $25,000 |

Subject to the terms and conditions set forth in this endorsement and the Limit of Insurance shown in the above Schedule, the following Crisis Response Coverage is added to the policy.

**SECTION I - CRISIS RESPONSE COVERAGE**

**A.** We will pay on your behalf reasonable and necessary "crisis response costs" you incur because of either:

**1.** "bodily injury" or "property damage" for which coverage is provided under the COMMERCIAL UMBRELLA COVERAGE FORM (including all its endorsements other than this endorsement), or

**2.** "imminent injury,"

arising out of a "crisis event" to which this insurance applies. The amount we will pay on your behalf for such "crisis response costs" is limited as described in SECTION II - CRISIS RESPONSE LIMITS OF INSURANCE.

**B.** This Crisis Response Coverage applies to a "crisis event" and its resulting "crisis response costs" only if:

**1.** The "bodily injury," "property damage," or "imminent injury" arising out of that "crisis event" takes place in the "coverage territory"; and

**2.** That "bodily injury," "property damage," or "imminent injury" begins to occur during the Policy Period; and

**3.** The "crisis response costs" because of that "bodily injury," "property damage," or "imminent injury" do not arise out of any fact, circumstance, condition, situation, "bodily injury," "property damage," or "imminent injury":

**a.** that existed before the Policy Period; and

**b.** that you, before the beginning of the Policy Period, knew or reasonably should have known could lead to, cause, give rise to, or result in such "crisis response costs"; and

**4.** You incur the "crisis response costs" because of the "bodily injury," "property damage," or "imminent injury" within thirty (30) days after the beginning of the "crisis event." The end of the Policy Period will not cut short this thirty (30) day period.

**C.**  Our payment of "crisis response costs" under this Crisis Response Coverage is not, and shall not be construed as, an admission or acknowledgement of coverage for any "crisis event," "bodily injury," "property damage," or "imminent injury" under any other part of this policy.

**D.**  Under this Crisis Response Coverage, we neither have nor undertake any duty to defend, pay, or settle any "claim" or "suit" against any Insured.

## SECTION II -  CRISIS RESPONSE LIMITS OF INSURANCE

**A.**  The Schedule above and the rules below establish the most we will pay on your behalf for "crisis response costs," regardless of the number of Insureds, "crisis events," or "affected persons."

**B.**  The Crisis Response Aggregate Limit is the most we will pay (whether by reimbursing you or by paying on your behalf) for the sum of all "crisis response costs."

**1.**  The Crisis Response Aggregate Limit is separate and apart from, and not part of or subject to, any other limit of insurance stated in this policy.

**2.**  Our payment of "crisis response costs" under the Crisis Response Aggregate Limit does not reduce any other limit of insurance under this policy.

**3.**  Once exhausted, the Crisis Response Aggregate Limit can not be reinstated, extended, or increased.

## SECTION III -  EXCLUSIONS

This Crisis Response Coverage does not apply to:

**A.**  **Excluded Bodily Injury or Property Damage**

"Crisis response costs" you incur because of:

**1.**  "bodily injury" or "property damage" for which coverage would be excluded under any exclusion in Section **IV. EXCLUSIONS** of the COMMERCIAL UMBRELLA COVERAGE FORM; or

**2.**  "imminent injury" if the threatened "bodily injury" or "property damage" is of a kind for which coverage would be excluded under any exclusion in Section **IV. EXCLUSIONS** of the COMMERCIAL UMBRELLA COVERAGE FORM.

**B.**  **Other Excluded Obligations**

Any obligation, damages, liability, cost, or expense for which coverage would be excluded by exclusions **A.**, **L.**, **R.**, **S.**, **U.**and **W.**, of Section **IV. EXCLUSIONS** of the COMMERCIAL UMBRELLA COVERAGE FORM, or by the Nuclear Energy Liability Exclusion.

**C.**  **Newly acquired or merged entities**

"Crisis response costs" arising from the operations of another business or organization which you acquire or with which you merge, if those "crisis response costs" arise from a "crisis event" that began before you acquired or merged with that other business or organization.

**D.**  **Infectious Diseases or Illnesses**

"Crisis response costs" arising out of any infectious disease or condition of ill health caused by any "biological agents". However, this exclusion does not apply to "crisis response costs" you incur because of a food-borne illness or defective vaccine.

**E.    Economic or Trade Sanctions**

Any "crisis response costs" as to which our payment or reimbursement would be a violation of any economic or trade sanction enacted or imposed by the United States of America, including, but not limited to, sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

**SECTION IV - DEFINITIONS**

The definitions of the COMMERCIAL UMBRELLA COVERAGE FORM apply to this endorsement. The following additional definitions also apply to this coverage part:

**A.**    "Affected person" means:

    **1.**    an individual who suffers "bodily injury" or "property damage," or directly experiences "imminent injury"; and

    **2.**    the immediate family members of a person described in **1.**, above.

**B.**    "Biological agents" means:

    **1.**    bacteria, other microorganisms, mycotoxins, spores or other by-products of any of the foregoing;

    **2.**    viruses or other pathogens (whether or not a microorganism); or

    **3.**    colony or group of any of the foregoing.

**C.**    "Coverage territory" means the United States of America, including its territories and possessions, Puerto Rico, and Canada.

**D.**    "Crisis event" means an event you reasonably believe has resulted, or may result, in both:

    **1.**    Damages covered by this policy that are in excess of all applicable:

        **a.**    "underlying insurance";

        **b.**    "retained limits"; and

        **c.**    other insurance; and

    **2.**    Significant adverse regional or national media coverage.

**E.**    "Crisis management firm" means a public relations firm or crisis management firm, assigned or approved by us in writing, that is hired by you to perform or coordinate services of a type described in the definition of "crisis response costs" in connection with a "crisis event."

**F.**    "Crisis response costs" means only the following expenses incurred by the Insured in response to a "crisis event" to which this insurance applies, and which are reasonable, necessary, and directly attributable to that "crisis event":

    **1.**    Expenses incurred by you to secure the scene of the "crisis event";

    **2.**    Fees charged by a "crisis management firm" for its professional service or advice;

    **3.**    Funeral expenses for "affected persons";

    **4.**    "Emergency psychology expenses";

    **5.**    Temporary living expenses for "affected persons";

GAI 7235 (Ed. 06/13)                                            (Page 3 of 4)

6.   "Emergency transport expenses"; and

7.   Any other expenses approved by us.

"Crisis response costs" does not include any cost or expense to defend, pay, or settle any "claim" or "suit" against any Insured.

**G.**   "Emergency transport expenses" means reasonable and necessary emergency transport expenses, occurring within 24-hours after a "crisis event," to transport an "affected person" sustaining "bodily injury" in a "crisis event" to a medical treatment facility.

**H.**   "Emergency psychology expenses" means reasonable and necessary expenses for psychology or counseling services provided to "affected persons," if such services are:

1.   rendered within the first fourteen (14) days after the beginning of a "crisis event"; and

2.   approved by a "crisis management firm."

However, "emergency psychology expenses" do not include any cost or expense of any medication, hospitalization, or in-patient treatment.

**I.**   "Imminent injury" means an actual and immediate threat of "bodily injury" or "property damage."

## SECTION V - CONDITIONS

All conditions under Section **VI. Conditions** of the COMMERCIAL UMBRELLA COVERAGE FORM apply to this Crisis Response Coverage, except conditions **A.**, **C.**, and **F.**. The following additional conditions also apply to this Crisis Response Coverage:

**A.**   **Duties in the Event of A "Crisis Event"**:

1.   You must see to it that we are notified of any "crisis event" within twenty-four (24) hours after it begins. If necessary, we will assist you in contacting an approved "crisis management firm," unless we agree to accept a "crisis management firm" you have selected.

2.   If you seek reimbursement from us of any "crisis response costs," you must request such reimbursement in writing within ninety (90) days after you incur those "crisis response costs." Each such request for reimbursement must include invoices and/or receipts proving and describing the "crisis response costs" with reasonable particularity.

**This endorsement does not change any other provision of the policy.**

GAI 7235 (Ed. 06/13)                                          (Page 4 of 4)

GREAT**AMERICAN**
INSURANCE GROUP

Administrative Offices
301 E 4th Street
Cincinnati OH  45202
513 369 5000 ph

GAI 7282 (Ed. 03/15)

**THIS  ENDORSEMENT  CHANGES  THE  POLICY.  PLEASE  READ  IT  CAREFULLY.**


**UNDERLYING  CLAIMS-MADE  COVERAGE**


This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA COVERAGE FORM**


**SECTION I. COVERAGE** is replaced by the following when any "underlying insurance" listed in the Schedule of Underlying Insurance is written on a claims-made basis, but only when this policy is excess of the retained limit for such "underlying insurance":

 **A.** We will pay on behalf of the "Insured" those sums in excess of the retained limit that the "Insured" becomes legally obligated to pay as damages by reason of liability imposed by law or assumed by the "Insured" under an "insured contract," because of:

   **1.** "bodily injury" or "property damage";

   **2.** "personal injury" or "advertising injury";

   **3.** "abuse";

   **4.** any act, error or omission of the "Insured" arising out of the "Insured's" rendering or failure to render "professional services";

   **5.** any act, error, or omission of the Insured negligently committed in the "administration" of your "employee benefit program":

   **6.** "wrongful act" of any director or officer of the "Insured" arising out the "Insured's" discharge or performance of any duties as such director or officer; or

   **7.** Any "wrongful act" arising out of employment practices liability.

If we are prevented by law or statute from paying such sums on behalf of the "Insured," then we will indemnify the "Insured" for them. The amount we will pay for damages is limited as described below in **SECTION II. LIMITS OF INSURANCE.**

 **B.** This insurance applies only if:

   **1.** For "bodily injury" or "property damage":

     **1.** the "bodily injury" or "property damage" is caused by an "occurrence";

     **2.** the "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown in the Declarations of that particular "underlying insurance" or after the end of the policy period; and

     **3.** a "claim" for damages because of the "bodily injury" or "property damage" above is first made against any "Insured" in accordance with Section I - Coverage paragraph D., during the policy period or any **Extended Reporting Period** we provide under **SECTION VII. EXTENDED REPORTING PERIODS**.

2.  For "personal injury" or "advertising injury":

    1.  the "personal injury" or "advertising injury" is caused by an offense arising out of your business,

    2.  the offense was not committed before the Retroactive Date, if any, shown in the Declarations of that particular "underlying insurance" or after the end of the policy period; and

    3.  a "claim" for damages because of the "personal injury" or "advertising injury" is first made against any "Insured" in accordance with Section I - Coverage paragraph D., during the policy period or any Extended Reporting Period we provide under Section VII - EXTENDED REPORTING PERIODS.

3.  For "abuse":

    1.  the "abuse" did not occur before the Retroactive Date, if any, shown in the Declarations of that particular "underlying insurance" or after the end of the policy period; and

    2.  a "claim" for damage because of any "abuse" is first made against the "Insured" in accordance with Section I - Coverage paragraph D. during the policy period or any Extended Reporting Period we provide under in the section below: **SECTION VII. EXTENDED REPORTING PERIODS**.

4.  For any act, error, or omission of the "Insured" arising out of the "Insured's" rendering or failure to render "professional services":

    1.  any act, error, or omission did not occur before the Retroactive Date, if any, shown in the Declarations of that particular "underlying insurance" or after the end of the policy period; and

    2.  a "claim" for damage because of any act, error, or omission is first made against the "Insured" in accordance with Section I - Coverage paragraph D. during the policy period and reported to the Company during the policy period or any Extended Reporting Period we provide under **SECTION VII. EXTENDED REPORTING PERIODS**.

5.  For any act, error, or omission of the "Insured" negligently committed in the "administration" of your "employee benefit program":

    1.  the act, error, or omission did not occur before the Retroactive Date, if any, shown in the Declarations of that particular "underlying insurance" or after the end of the policy period; and

    2.  a "claim" for damage because of any act, error, or omission is first made against the "Insured" during the policy period and reported to the Company during the policy period or any Extended Reporting Period we provide under in the **SECTION VII. EXTENDED REPORTING PERIODS**.

6.  For any "wrongful act" caused by any director or officer of the "Insured" arising out of the "Insured's" discharge or performance of any duties as such director or officer.

    1.  the "wrongful act" was not committed before the Retroactive Date, if any, shown in the Declarations of that particular "underlying insurance" or after the end of the policy period; and

GAI 7282 (Ed. 03/15)                              (Page 2 of 6)

   **2.** a "claim" for damages because of the "wrongful act" is first made against any "Insured" in accordance with Section I - Coverage paragraph D., during the policy period or any Extended Reporting Period we provide under **SECTION VII. EXTENDED REPORTING PERIODS**.

  **7.** For any "wrongful act" arising out of employment practices liability:

    **1.** the "wrongful act" was not committed before the Retroactive Date, if any, shown in the Declarations of that particular "underlying insurance" or after the end of the policy period; and

    **2.** a "claim" for damages because of the "wrongful act" is first made against any "Insured" in accordance with Section I - Coverage paragraph D., during the policy period or any Extended Reporting Period we provide under **SECTION VII. EXTENDED REPORTING PERIODS**.

**C.** "Bodily injury," "property damage," "personal injury," "advertising injury," "abuse," any act, error, or omission of the "Insured" arising out of the "Insured's" rendering or failure to render "professional services" or any act, error, or omission of the "Insured" negligently committed in the "administration" of your "employee benefit program", "wrongful act" of any director or officer of the "Insured" arising out of the "Insured's" discharge or performance of any duties as such director or officer, any "wrongful act" arising out of employment practices liability which occurs during the policy period, and was not, prior to the policy period, known to have occurred by any "Insured," includes any continuation, change, or resumption of that "bodily injury," "property damage," "personal injury," "advertising injury," "abuse," any act, error, or omission of the "Insured" arising out of the "Insured's" rendering or failure to render "professional services" or any act, error, omission of the "Insured" negligently committed in the "administration" of your "employee benefit program" "wrongful act" of any director or officer of the "Insured" arising out of the "Insured's" discharge or performance of any duties as such director or officer or any "wrongful act" arising out of employment practices liability after the end of the policy period.

**D.** "Bodily injury," "property damage," "personal injury," "advertising injury," "abuse," any act, error, or omission of the "Insured" arising out of the "Insured's" rendering or failure to render "professional services" or any act, error, or omission of the "Insured" negligently committed in the "administration" of your "employee benefit program", "wrongful act" of any director or officer of the "Insured" arising out of the "Insured's" discharge or performance of any duties as such director or officer, any "wrongful act" arising out of employment practices liability.

**E.** will be deemed to have been known by all "Insureds" to have occurred at the earliest time when any "Insured":

  **1.** reports all, or any part, of the "bodily injury," "property damage," "personal injury," "advertising injury," "abuse," any act, error, or omission of the "Insured" arising out of the "Insured's" rendering or failure to render "professional services" or any act, error, omission of the "Insured" negligently committed in the "administration" of your "employee benefit program", "wrongful act" of any director or officer of the "Insured" arising out of the "Insured's" discharge or performance of any duties as such director or officer, or any "wrongful act" arising out of employment practices liability to us or any other insurer;

  **2.** receives a written or verbal demand or "claim" for damages because of the "bodily injury," "property damage," "personal injury," "advertising injury," "abuse," any act, error, or omission of the "Insured" arising out of the "Insured's" rendering or failure to render "professional services" or any act, error, omission of the "Insured" negligently committed in the "administration" of your "employee benefit program", "wrongful act" of any director or officer of the "Insured" arising out of the "Insured's" discharge or performance of any duties as such director or officer or any "wrongful act" arising out of employment practices liability; or

3. becomes aware by any other means that "bodily injury," "property damage," "personal injury," "advertising injury," "abuse," any act, error, or omission of the "Insured" arising out of the "Insured's" rendering or failure to render "professional services", any act, error, or omission of the "Insured" negligently committed in the "administration" of your "employee benefit program", "wrongful act" of any director or officer of the "Insured" arising out of the "Insured's" discharge or performance of any duties as such director or officer or any "wrongful act" arising out of employment practices liability has occurred or begun to occur.

The following is added to the policy:

## SECTION VII. EXTENDED REPORTING PERIODS

**A.** With respect to any "underlying insurance" written on a claims-made basis, we will provide one or more Extended Reporting Periods, as described below, if:

1. This Coverage Part is canceled or not renewed; or

2. "Underlying insurance" written on a claims-made basis is renewed or replaced with insurance that:

   **a.** Has a Retroactive Date later than the date shown in the Declarations of the "underlying insurance"; or

   **b.** Does not apply to any of the following on a claims-made basis:

      **(1)** "bodily injury" or "property damage";

      **(2)** "personal injury" or "advertising injury";

      **(3)** "abuse";

      **(4)** any act, error, or omission of the "Insured" arising out of the "Insured's" rendering or failure to render "professional services";

      **(5)** any act, error, or omission of the "Insured" negligently committed in the "administration" of your "employee benefit program";

      **(6)** "wrongful act" of any director or officer of the "Insured" arising out of the "Insured's" discharge or performance of any duties as such director or officer; or

      **(7)** any "wrongful act" arising out of employment practices liability.

**B.** Extended Reporting Periods do not extend the policy period or change the scope of coverage provided. They apply only to claims for:

1. "Bodily injury" or "property damage" that occurs before the end of the policy period but not before the Retroactive Date, if any, shown in the Declarations of the "underlying insurance";

2. "Personal injury" or "advertising injury" caused by an offense committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Declarations of the "underlying insurance";

3. "Abuse" committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Declarations of the "underlying insurance";

4. Any act, error, or omission of the "Insured" arising out of the "Insured's" rendering or failure to render "professional services" committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Declarations of the "underlying insurance";

GAI 7282 (Ed. 03/15)                    (Page 4 of 6)

5. Any act, error, or omission of the "Insured" negligently committed in the "administration" of your "employee benefit program" committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Declarations of the "underlying insurance."

6. "wrongful act" of any director or officer of the "Insured" arising out of the "Insured's" discharge or performance of any duties as such director or officer; or

7. "wrongful act" arising out of employment practices liability.

Once in effect, Extended Reporting Periods may not be canceled.

C. A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period and lasts for:

1. Five years with respect to claims because of "bodily injury" and "property damage" arising out of an "occurrence" reported to us, not later than 60 days after the end of the policy period, in accordance with the Duties In The Event Of Occurrence, Offense, Claim Or Suit Condition;

2. Five years with respect to claims because of "personal injury" or "advertising injury" arising out of an offense reported to us, not later than 60 days after the end of the policy period, in accordance with the Duties In The Event Of Occurrence, Offense, Claim Or Suit Condition;

3. Five years with respect to claims because of "abuse" reported to us, not later than 60 days after the end of the policy period, in accordance with the Duties In The Event Of Occurrence, Offense, Claim Or Suit Condition;

4. Five years with respect to claims because of any act, error, or omission of the "Insured" arising out of the "Insured's" rendering or failure to render "professional services" reported to us, not later than 60 days after the end of the policy period, in accordance with the Duties In The Event Of Occurrence, Offense, Claim Or Suit Condition;

5. Five years with respect to claims because of any act, error, or omission of the "Insured" negligently committed in the "administration" of your "employee benefit program" reported to us, not later than 60 days after the end of the policy period, in accordance with the Duties In The Event Of Occurrence, Offense, Claim Or Suit Condition;

6. Five years with respect to claims because of a "wrongful act" of any director or officer of the "Insured" arising out of the "Insured's" discharge or performance of any duties as such director or officer reported to us, not later than 60 days after the end of the policy period, in accordance with the Duties In The Event Of Occurrence, Offense, Claim Or Suit Condition;

7. Five years with respect to claims because of an "wrongful act" arising out of employment practices liability reported to us, not later than 60 days after the end of the policy period, in accordance with the Duties In The Event Of Occurrence, Offense, Claim Or Suit Condition; and

8. Sixty days with respect to claims arising from "occurrences" or offenses not previously reported to us.

The Basic Extended Reporting Period does not apply to claims that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such claims.

D. The Basic Extended Reporting Period does not reinstate or increase the Limits of Insurance.

E. A Supplemental Extended Reporting Period of unlimited duration is available, but only by an endorsement and for an extra charge. This supplemental period starts when the Basic Extended Reporting Period, set forth in Paragraph 3. above, ends.

GAI 7282 (Ed. 03/15)                                    (Page 5 of 6)

You must give us a written request for the endorsement within 60 days after the end of the policy period. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

    **1.**  The exposures insured on a claims-made basis;

    **2.**  Previous types and amounts of insurance;

    **3.**  Limits of Insurance available under this Coverage Part for future payment of damages; and

    **4.**  Other related factors.

This endorsement shall set forth the terms, not inconsistent with this section, applicable to the Supplemental Extended Reporting Period.

  **F.**  If the Supplemental Extended Reporting Period is in effect, we will provide a supplemental aggregate limit of insurance equal to the dollar amount of the Aggregate Limit shown in the Declarations in effect at the end of the policy period, but only for claims first received and recorded during the Supplemental Extended Reporting Period.

Limits of Insurance will be amended accordingly. The Each Occurrence Limit shown in the Declarations will then continue to apply.

The following are added to **SECTION V. DEFINITIONS**:

"Abuse" means "abuse" as defined in the "underlying insurance" that provides coverage for "abuse".

"Professional Services" means "professional services" as defined in the "underlying insurance" that provides coverage for "professional services".

"Administration" means "administration" as defined in the "underlying insurance" that provides coverage for employee benefits liability.

"Employee benefit program" means "employee benefit program" as defined in the "underlying insurance" that provides coverage for employee benefits liability.

Wrongful acts" means "wrongful acts" as defined in the "underlying insurance" that provides coverage for "wrongful acts".

**This endorsement does not change any other provision of the Policy.**

**GREAT**AMERICAN®
INSURANCE GROUP

Administrative Offices
301 E 4th Street
Cincinnati OH 45202
513 369 5000 ph

GAI 7305 (Ed. 03/15)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**LIMITATION OF COVERAGE FOR UNDERLYING SUBLIMITS**

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA COVERAGE FORM**

The following is added to **SECTION I. COVERAGE**:

If any policy listed in the Schedule of Underlying Insurance affords coverage for any "bodily injury," "property damage," "personal injury," or "advertising injury" that is subject to a sublimit **SECTION I. COVERAGE** does not apply for any such coverage.

**This endorsement does not change any other provision of the Policy.**

GAI 7305 (Ed. 03/15)



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

**GAI 6129**
(Ed. 04 10)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PERSONAL INJURY – FOLLOWING FORM

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

The following exclusion is added to Section **IV – EXCLUSIONS, AA. Following Form**:

Any liability imposed by law, or assumed by any "Insured" under an "insured contract," because of "personal injury".

**This endorsement does not change any other provision of the policy.**

GAI 6129 (Ed. 04/10) XS



Administrative Offices
301 E 4th Street
Cincinnati OH  45202-4201
513 369 5000 ph

**GAI 6047**
(Ed. 04  10)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ADVERTISING INJURY -  FOLLOWING FORM**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

The following exclusion is added to Section **IV. EXCLUSIONS**, **AA. Following Form**:

Any liability imposed by law, or assumed by any "Insured" under an "insured contract," because of "advertising injury".

**This endorsement does not change any other provision of the policy**.

GAI 6047 (Ed. 04/10) XS

**GREATAMERICAN** INSURANCE GROUP

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

**GAI 6153**
(Ed. 04 10)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EMPLOYEE BENEFIT LIABILITY - FOLLOWING FORM**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

The following exclusion is added to Section **IV - EXCLUSIONS, AA. Following Form**:

Any actual or alleged act, error, or omission in the administration of any "Insured's" Employee Benefit Programs.

**This endorsement does not change any other provision of the policy.**

GAI 6153 (Ed. 04/10) XS

GREAT**AMERICAN**®
INSURANCE GROUP

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

**GAI 6126**
(Ed. 04 10)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**LIQUOR LIABILITY – FOLLOWING FORM**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

The following exclusion is added to Section **IV – EXCLUSIONS, AA. Following Form**:

Any liability of any "Insured" by reason of:

1. causing or contributing to the intoxication of any person; or

2. the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3. any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

**This endorsement does not change any other provision of the policy.**

GAI 6126 (Ed. 04/10) XS

GREAT AMERICAN INSURANCE GROUP

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

**GAI 6136**
(Ed. 04 10)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PUNITIVE OR EXEMPLARY DAMAGES – FOLLOWING FORM

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

The following exclusion is added to Section **IV – EXCLUSIONS, AA. Following Form**:

This insurance does not apply to any claim for or award of:

**(a)**  punitive damages,

**(b)**  exemplary damages,

**(c)**  treble damages, or

**(d)**  damages intended to punish or deter misconduct, rather than to compensate for harm.

**This endorsement does not change any other provision of the policy.**

GAI 6136 (Ed. 04/10) XS



Administrative Offices
301 E 4th Street
Cincinnati  OH  45202-4201
513 369 5000 ph

**GAI 6134**
(Ed.  04  10)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PRODUCTS-COMPLETED OPERATIONS - FOLLOWING FORM

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

The following exclusion is added to Section **IV -  EXCLUSIONS**, **AA. Following Form**:

Any liability arising out of the "products-completed operations hazard".

**This endorsement does not change any other provision of the policy.**

GAI 6134  (Ed. 04/10)  XS



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

**GAI 6050**
(Ed. 06 97)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## INTELLECTUAL PROPERTY EXCLUSION

The following exclusion is added to Section **IV - EXCLUSIONS:**

Any liability arising out of or directly or indirectly related to the actual or alleged publication or utterance or oral or written statements which are claimed as an infringement, violation or defense of any of the following rights or laws:

1. copyright, other than infringement of copyrighted advertising materials;

2. patent;

3. trade secrets;

4. trade dress; or

5. trade mark or service mark or certification mark or collective mark or trade name, other than trademarked or service marked titles or slogans.

This endorsement does not change any other provision of the policy.

GAI 6050 (Ed. 06/97) XS



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

**GAI 6333**
(Ed. 06 97)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION - LIABILITY ARISING OUT OF LEAD

The following exclusion is added to Section **IV - EXCLUSIONS:**

1. any liability arising out of, resulting from, or in any way caused by or related to any actual, alleged or threatened ingestion, inhalation, absorption, or exposure to lead, in any form from any source; or

2. any loss, cost, expense, liability or other type of obligation arising out of or resulting from, or in any way related to, any:

   a. claim, suit, request, demand, directive, or order by or on behalf of any person, entity, or governmental authority that any "Insured" or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of lead in any form from any source, or to any

   b. claim or suit by or on behalf of any person, entity, or governmental authority for damages or any other relief or remedy because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to or assessing the effects of lead in any form.

This endorsement does not change any other provision of the policy.

GAI 6333 (Ed. 06/97) XS



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

**GAI 6135**
(Ed. 06 97)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**PROFESSIONAL LIABILITY EXCLUSION**

The following exclusion is added to Section **IV - EXCLUSIONS:**

Any liability for, caused by, arising out of, or in connection with the rendering of or failure to render any professional service.

This endorsement does not change any other provision of the policy.

GAI 6135 (Ed. 06/97) XS

GAI 6011
(Ed. 06 97)

**GREAT**AMERICAN.
**INSURANCE GROUP**

Administrative Offices
301 E 4th Street
Cincinnati OH 45202-4201
513 369 5000 ph

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AMENDMENT OF POLLUTION EXCLUSION – EXCEPTION FOR SPECIFIED PERILS**

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA COVERAGE FORM**

The following is added to Section **IV. EXCLUSIONS, S. Pollution:**

This exclusion does not apply to "bodily injury" or "property damage" arising out of the discharge, dispersal, seepage, migration, release, escape, presence of, or exposure to, any "pollutant" listed in the Schedule of this endorsement and used in connection with the "Insured's" operations to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

**Schedule:**

1.  Fumes and vapors emanating from an "auto"

2.  Chlorine or other pool or spa chemicals, including release of such from a swimming pool

3.  Pollutant resulting from collision or overturn of an "auto" or "mobile equipment"

4.  Smoke, fumes, vapor, or soot from equipment used to cool or dehumidify a building or heat water for personal use

This exception does not apply to the discharge, dispersal, seepage, migration, release, escape, presence of, or exposure to, a "pollutant" listed in the Schedule of this endorsement which takes place while such "pollutant" is being:

(a)  Transported, handled, stored, treated, disposed of, or processed as waste; or
(b)  Transported or stored for others.


**This endorsement does not change any other provision of the Policy.**

GAI 6011
(Ed. 06 97)

**GREAT**AMERICAN®
**INSURANCE GROUP**

Administrative Offices
301 E 4th Street
Cincinnati OH 45202-4201
513 369 5000 ph

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION-NUCLEAR, BIOLOGICAL, OR CHEMICAL FROM A "CERTIFIED ACT OF TERRORISM"**

This endorsement modifies insurance provided by:

**COMMERCIAL UMBRELLA COVERAGE FORM**
**EXCESS LIABILITY COVERAGE FORM**

The following exclusion is added to **SECTION IV – EXCLUSIONS**:

**Nuclear, Biological, or Chemical From A "Certified Act of Terrorism"**

Any and all liability of any nature, including, but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, consultants or medical personnel, arising out of, caused by, resulting from, contributed to, aggravated by or related in any way, either directly or indirectly, and either in whole or in part, out of a "certified act of terrorism" to:

1. Any actual, attempted, suspected, or threatened use of any "NBC material" as part of any plan, effort, or design, actually or apparently intended to cause any:

(a) loss or damage to any tangible or intangible property, or
(b) bodily injury, physical injury, sickness, or disease, including death of a person, or
(c) mental injury, mental anguish, emotional distress, humiliation, or shock, if directly resulting from physical injury, sickness or disease to that person.

2. Any actual, attempted, suspected, or threatened presence, spread, dissemination, release, escape, or distribution of any "NBC material" as a direct or indirect result of any actual, attempted, suspected, or threatened plan, effort, or design, actually or apparently intended, resulting from a "certified act of terrorism" to cause any:

(a) loss or damage to any tangible or intangible property, or
(b) bodily injury, physical injury, sickness, or disease, including death of a person, or
(c) mental injury, mental anguish, emotional distress, humiliation, or shock, if directly resulting from physical injury, sickness or disease to that person.

3. Any request, demand, or order resulting from a "certified act of terrorism" that any "Insured" or others test for, monitor, clean up, remove, contain, make repairs, treat, decontaminate, detoxify, neutralize, abate, or in any way respond to or assess any effects of "NBC material". This includes, but is not limited to, any demand, directive, complaint, suit, order or request by any governmental or non-governmental entity or by any organization, person, or group of persons.

GAI 6011 (Ed. 06/97) PRO                    Page 1 of 2

GAI 6011
(Ed. 06 97)

4. Steps taken or amounts incurred by any governmental or non-governmental entity or by any organization, person or group of persons, resulting from a "certified act of terrorism", to test for, monitor, clean up, remove, contain, repair, treat, decontaminate, detoxify, neutralize, abate, or in any way respond to or assess any effects of "NBC material".

As used in this exclusion:

**"Certified act of terrorism"** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of pure terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. the act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. the act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**"NBC material"** means any nuclear, biological, or chemical material or substance that causes damage to property or is harmful to human health. "NBC material" includes, but is not limited to:

1. Any radioactive substance or material, and the radiation it releases,

2. Any pathogen, bacterium, microbe, virus, or other organism,

3. Any substance or material produced by or from any pathogen, bacterium, microbe, virus, or other organism, and

4. Any poison, toxin, or other harmful chemical, substance, or material.

The foregoing list 1. through 4. is only illustrative, and should not be construed as a complete, exclusive, or exhaustive list of all "NBC materials".

**This endorsement does not change any other provision of the policy.**

**Great**AMERICAN®
INSURANCE GROUP

Administrative Offices
301 E 4th Street
Cincinnati OH  45202-4201
513 369 5000 ph

GAI 7281 (Ed. 08  14)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION - ORGANIC PATHOGENS - WITH EXCEPTION FOR FOOD AND BEVERAGES

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

The following is added to **SECTION IV. EXCLUSIONS**:

**Organic Pathogens**

1.  "Bodily injury", "property damage", "personal injury" or "advertising injury" arising out of any actual, alleged or threatened infectious, pathogenic, toxic or other harmful properties of any "organic pathogen."

2.  Any loss, cost or expense arising out of any:

    a.  request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of any "organic pathogen," or

    b.  claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of any "organic pathogen."

This exclusion does not apply to "bodily injury" caused by any "organic pathogen" in or on any food or beverages sold, distributed, served or handled by any insured. However, under no circumstances will the coverage provided by this Policy be any broader than the coverage provided by the "underlying insurance".

The following definition is added to **SECTION V. DEFINITIONS**:

**"Organic pathogen"** means any:

1.  Bacteria; mildew, mold or other fungi; other microorganisms; or mycotoxins, spores or other by-products of any of the foregoing;

2.  Viruses or other pathogens (whether or not a microorganism); or

3.  Colony or group of any of the foregoing.

**All other terms and conditions of the Policy apply.**

GAI 7281 (Ed. 08/14)



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

**GAI 6819**
(Ed. 10 04)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SILICA OR RELATED DUST EXCLUSION

The following exclusion is added to **SECTION IV - EXCLUSIONS**:

Any and all liability of any nature, including, but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, consultants or medical personnel, arising out of, caused by, resulting from, contributed to, aggravated by or related in any way, either directly or indirectly, and either in whole or in part, to:

1. Any actual, alleged or threatened exposure to, existence of, presence of, ingestion of, inhalation of or contact with "silica" or dust that includes or contains "silica," whether or not occurring alone, in combination with, before, after, or concurrently with any other cause, contributing condition or circumstance, or aggravating factor, whether manmade, natural, or any combination of manmade or natural.

2. Any request, demand, or order that any "Insured" or others test for, monitor, clean up, remove, contain, make repairs, treat, decontaminate, detoxify, neutralize, abate, or in any way respond to or assess any effects of "silica" or dust that includes or contains "silica." This includes, but is not limited to, any demand, directive, complaint, suit, order or request by any governmental or non-governmental entity or by any organization, person or group of persons.

3. Steps taken or amounts incurred by any governmental or non-governmental entity or by any organization, person or group of persons to test for, monitor, clean up, remove, contain, repair, treat, decontaminate, detoxify, neutralize, abate, or in any way respond to or assess any effects of "silica" or dust that includes or contains "silica."

This exclusion applies regardless of whether or not the "silica" or dust that includes or contains "silica," or any of their effects, were sudden, accidental, gradual, intended, expected, unexpected, preventable, not preventable, manmade, naturally occurring, or any combination of the foregoing.

As used in this exclusion:

"Silica" means silicon dioxide ($SiO_2$) in any form, from any source.

**This endorsement does not change any other provision of the policy.**

GAI 6819 (Ed. 10/04) XS

GREATAMERICAN®
INSURANCE GROUP

Administrative Offices
301 E 4th Street
Cincinnati OH 45202-4201
513 369 5000 ph

GAI 7278 (Ed. 06 13)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## BROAD NAMED INSURED

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

Under Section **V. DEFINITIONS**, **J.** is deleted in its entirety and replaced with the following:

**J.** "Insured" means each of the following, to the extent set forth:

  **1.** The Named Insured, meaning:

   **a.** The Named Insured listed in Item 1. of the Declarations is changed to the following:

   All members of the **Select Hospitality Insurance Group, Inc.** risk purchasing group, as scheduled on the individual certificate of coverage and or the schedule of named insureds attached thereto.

   (Information required to complete this Schedule, if not shown above, will be shown in the Declarations).

   **b.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, will qualify to be a Named Insured.

  **2.** Any company, parent, subsidiary entity, trust, partnership, limited liability company or joint venture for which the Named Insured has the responsibility for placing insurance. This includes any company or corporation not defined as a Named Insured as stated in 1.b. above.

  However, the following items (1) and (2) apply to Provision 1. and 2. above:

  **(1)** coverage does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" that occurred before you acquired or formed the organization; and

  **(2)** coverage applies only if the organization is included under the coverage provided by the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such "underlying insurance".

  **3.** If you are an individual, you and your spouse, but only with respect to the conduct of a business of which you are the sole owner as of the effective date of this policy.

  **4.** If you are a partnership or joint venture, the partners or members and their spouses but only as respects the conduct of your business.

  **5.** If you are a limited liability company, the members or managers but only as respects the conduct of your business.

**6.** Any person or organization, other than the Named Insured, included as an additional "Insured" solely by virtue of an "insured contract", or a contract that includes an "insured contract", and to which coverage is provided by the "underlying insurance", and for no broader coverage than is provided by the "underlying insurance" to such additional "Insured". The Limits of Insurance applicable to the additional "Insured" are the lesser of those specified in the Declarations of this policy or those specified in the "insured contract" or a contract that includes an "insured contract" less the applicable "underlying insurance". The Limits of Insurance applicable to the additional "Insured" are included within, and no in addition to, the Limits of Insurance shown in the Declarations.

**7.** Any of your partners, executive officers, directors, or employees, but only while acting within the scope of their duties. However, the coverage granted by this subparagraph 7. does not apply to the ownership, maintenance, use, "loading" or "unloading" of any "autos", aircraft or watercraft unless such coverage is included under the policies listed in the Schedule of Underlying Insurance and for no broader coverage than is provided under such "underlying insurance". Employees include "leased workers" but no "temporary workers". "Leased workers" are leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties to the conduct of your business. "Leased workers" are not "temporary workers". "Temporary workers" are persons furnished to you to substitute for permanent employees on leave or to meet seasonal or short-term workload conditions.

**8.** Any person, other than one of your employees, or organization while acting as your real estate manager.

**9.** Any person (other than your partners, executive officers, directors, stockholders or employees) or organizations with respect to any "auto" owned by you, loaned to you or hired by you or on your behalf and used with your permission. However, the coverage granted by this subparagraph 9. does not apply to any person using an "auto" while working in a business that sells, services, repairs or parks "autos" unless you are in that business.

**This endorsement does not change any other provision of the policy.**

GAI 7278 (Ed. 06/13)                                    (Page 2 of 2)

**GREAT AMERICAN** INSURANCE GROUP

Administrative Offices
301 E 4th Street
Cincinnati OH 45202-4201
513 369 5000 ph

GAI 7279 (Ed. 06 13)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US - WAIVER OF RIGHTS OF RECOVERY (WAIVER OF SUBROGATION)

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

Under Section **VI. CONDITION, Q. Transfer of Rights of Recovery Against Others to Us** is deleted in its entirety and replaced with the following:

**Q.  Transfer of Rights of Recovery Against Others to Us**

**1.  Transfer of Rights of Recovery**

If any "Insured" has rights to recover all or part of any payment we have made under this Policy, those rights are transferred to us. The "Insured" must do nothing after loss to impair those rights and must help us enforce them. At our request, the "Insured" will bring "suit" or transfer those rights to us and help us to enforce them.

Any recoveries will be applied as follows:

**a.**  Any interests, including the "Insured", that have paid an amount in excess of our payment under this Policy will be reimbursed first;

**b.**  We then will be reimbursed up to the amount we have paid; and

**c.**  Lastly, any interests, including the "Insured", over which our insurance is excess, are entitled to claim the residue.

Expenses incurred in the exercise of rights of recovery will be apportioned between the interests, including the "Insured", in the ratio of their respective recoveries as finally settled.

**2.  Waiver of Rights of Recovery (Waiver of Subrogation)**

If the "Insured" waives any right of recovery against any person or organization for all or part of any payment, including supplementary payments, we make under this Policy, we also waive that right, provided the "Insured" waives such right of recovery against such person or organization in a written contract executed before the "occurrence", "bodily injury", "property damage", offense, "personal injury" or "advertising injury" took place.

**This endorsement does not change any other provision of the Policy.**

GAI 7279 (Ed. 06/13)



Administrative Offices
301 E 4th Street
Cincinnati OH 45202-4201
513 369 5000 ph

GAI 6472 (Ed. 04 10)

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

## DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

**Schedule\***

**Terrorism Premium (Certified Acts) -** included

\*  Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.    Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B.    Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C.    Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**This endorsement does not change any other provision of the policy.**

Includes copyrighted material of ISO Properties, Inc., with its permission.

GAI 6472 (Ed. 04/10)                    (Page 1 of 1)                                      F 8972D (3/2011)

GAI 6011
(Ed. 06/97)

**GREATAMERICAN**
INSURANCE GROUP

Administrative Offices
301 E 4th Street
Cincinnati OH 45202-4201
513 369 5000 ph

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM**

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA COVERAGE FORM**

A.      If aggregate insured losses attributable to terrorist acts certified  under  the  federal  Terrorism  Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk  Insurance Act, we shall  not  be  liable  for  the  payment  of  any  portion  of  the  amount of such losses that exceeds $100 billion,  and in such case insured losses up  to  that  amount are subject to pro rata allocation in accordance with procedures  established by the Secretary  of  the Treasury.

B.      **"Certified act of terrorism"** means an act that is certified by the  Secretary  of  the  Treasury,  in accordance with the federal Terrorism Risk Insurance Act, to be an  act  of  terrorism  pursuant to the Federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of  terrorism" include the following:

1.      the act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism  Risk Insurance Act; and

2.      the act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the  policy or affect the  conduct of the United States Government by coercion.

C.      In the event that any "certified act of terrorism" is not covered by "underlying insurance" or any other insurance due to any exclusion or exclusions contained therein then the following is added to **ITEM 5**. of the Declarations:

**"Certified Acts of Terrorism" Retained Limit:** $1,000,000 Each Occurrence

D.      In the event that any "certified act of terrorism" is not covered by "underlying insurance" or any other insurance due to any exclusion or exclusions contained therein then the following is added to **SECTION II - LIMITS  OF INSURANCE:**

H.      **"Certified Act of Terrorism" Retained Limit**

We will be liable only for that portion of damages, subject to the Each Occurrence Limit stated  in the Declarations, in excess of the "Certified Act of Terrorism" Retained Limit which is the greater of:

GAI 6011
(ed. 06/97)

1.    the total amounts stated as the applicable limits of the "underlying insurance" and the applicable limits of any other insurance providing "certified act of terrorism" coverage to the "Insured" during the Policy Period; or

2.    the amount stated in the Declarations as "Certified Act of Terrorism" Retained Limit as a result of any "certified act of terrorism" not covered by any "underlying insurance" nor by any other  insurance providing coverage to  the "Insured" during the Policy Period.

All "claims" and "suits" seeking damages for any liability out of a "certified act of terrorism" are subject to the "Certified Act of Terrorism" Retained Limit. "Defense expenses" shall not erode the "Certified Act of Terrorism" Retained Limit.

**This endorsement does not change any other provision of the Policy.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.



Administrative Offices
301 E 4th Street
Cincinnati OH 45202-4201
513 369 5000 ph

GAI 6458 (Ed. 04 10)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

The following exclusion is hereby added to **SECTION IV - EXCLUSIONS**:

**A.**  This insurance does not apply to:

**Terrorism Punitive Damages**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

**B.**  The following definitions are added:

**1.**  For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable and includes but is not limited to "bodily injury," "property damage," "personal and advertising injury," "loss," "injury" or "environmental damage" as may be defined in any applicable Coverage Part or "underlying insurance."

**2.**  **"Certified act of terrorism"** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.**  the act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.**  the act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**This endorsement does not change any other provision of the policy.**

Includes copyrighted material of ISO Properties, Inc., with its permission.

GAI 6458 (Ed. 04/10)

F 8972D (3/2011)

GREAT AMERICAN
INSURANCE GROUP

Administrative Offices
301 E 4th Street
Cincinnati OH 45202-4201
513 369 5000 ph

GAI 7268 (Ed. 05 14)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - LIMITED BODILY INJURY EXCEPTION NOT INCLUDED

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

Exclusion **J.** under Section **IV. EXCLUSIONS** is replaced by the following:

**IV.  Exclusions**

This insurance does not apply to:

**J.  Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**1.** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**2.** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **1.** or **2.** above.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**This endorsement does not change any other provision of the policy.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission

GAI 7268 (Ed. 05/14)



Administrative Offices
301 E 4th Street
Cincinnati OH 45202-4201
513 369 5000 ph

GAI 6011
(Ed. 06/97)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**SUPPLEMENTARY PAYMENTS - INTEREST**

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA COVERAGE FORM**

1.  **Section III. DEFENSE. B. 3. d. and e**. are deleted entirely.

2.  **Section VII. SUPPLEMENTARY PAYMENTS** is added to the coverage form to include the following:

    SUPPLEMENTARY PAYMENTS

    We will pay the following, but only to the extent they are neither paid nor required to be paid by one or more of the underlying policies listed in the Schedule of Underlying Insurance nor by any other insurance providing coverage to the "Insured".

    a.  pre-judgment interest awarded against the "Insured" on that part of the judgment we pay that is within our applicable Limit of Insurance.  If we make an offer to pay our applicable Limit of Insurance, we will not pay any pre-judgment interest based on the period of the time after the offer;

    b.  all interest that accrues after entry of judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within our applicable Limit of Insurance.

    These interest payments are in addition to our Limits of Insurance.

        This endorsement does not change any other provision of the policy.

Page **1** of 1



Administrative Offices
301 E 4th Street
Cincinnati, Ohio 45202-4201
Tel: 1-513-369-5000

**IL 72 68**
(Ed. 09 09)

## In Witness Clause

In Witness Whereof, we have caused this Policy to be executed and attested, and, if required by state law, this Policy shall not be valid unless countersigned by our authorized representative.

**President**                                    **Secretary**

IL7268DL (09/09)
IL 72 68 (Ed. 09/09) XS