UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GREAT AMERICAN ALLIANCE
INSURANCE COMPANY,

      Plaintiff,

    v.

GLOBAL MANAGEMENT &
INVESTMENT CORPORATION, et
al.,

      Defendants.

CIVIL ACTION NO.

1:25-CV-375-SEG

## O R D E R

This case is before the Court on Defendants Global Management &

Investment Corporation and Shiv Global Hotel, LLC's motion to dismiss. (Doc.

14.) After due consideration, the Court enters the following order.

## I.   Factual Background[1]

This is a declaratory judgment action that stems from a lawsuit (the

"Underlying Action") brought by Defendant M.P. against Defendants Global

Management & Investment Corporation ("GMIC") and Shiv Global Hotel, LLC

("Shiv Global"). (Doc. 1.) In this case, GMIC and Shiv Global's excess insurer,

---

[1] The following facts are derived from Plaintiff's complaint. (Doc. 1.) For purposes of resolving the pending motion to dismiss, the Court accepts the well-pled allegations as true and construes them in the light most favorable to Plaintiff. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321-22 (11th Cir. 2012).

Plaintiff Great American Alliance Insurance Company ("Great American") seeks a declaration from this Court that it has no obligation to defend and indemnify GMIC and Shiv Global in the Underlying Action. (*Id*.) Great American also seeks a declaration that the commercial umbrella and excess liability policy it issued to GMIC and Shiv Global ("Insured Defendants"), for the premises located at 2859 Panola Road, Lithonia, Georgia (the "Knights Inn Location"), is rescinded and *void ab initio,* based on misrepresentations the Insured Defendants allegedly made in their insurance application. (*Id*.) [2]

### A. The Umbrella Policy and Defendants' Alleged Misrepresentations

On or about November 25, 2015, Great American issued a commercial umbrella and excess liability policy, compromised of a certificate and master policy (the "Umbrella Policy"), to the Insured Defendants providing coverage as to the Knights Inn Location. (*Id*. ¶¶ 22-23; Doc. 1-2.) The certificate

---

[2] Great American argues that Defendants "mischaracterize" this case as a declaratory judgment case seeking determinations as to Great American's coverage obligations for the Underlying Action. (Doc. 20 at 9.) Elsewhere, Great American similarly insists that this lawsuit "exclusively addresses rescission." (*Id*. at 2.) However, Plaintiff's complaint expressly seeks "[a] declaration that Great American has no duty to defend or indemnify Defendants GMIC and Shiv Global in connection with the Underlying Lawsuit[.]" (Doc. 1 at 14.)

provided $10 million of umbrella and excess liability insurance coverage for the period of November 26, 2015, to November 26, 2016.  (Doc. 1 ¶ 22.)

Under the Umbrella Policy, Great American has the "right and duty to investigate any 'claim' and defend any 'suit' seeking damages" covered by the terms and conditions of the Policy when:

1. the applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limit of Insurance of all other insurance providing coverage to the "Insured" have been exhausted by actual payment of "claims" for any "occurrence" to which this Policy applies; or

2. damages are sought for any "occurrence" which is covered by this Policy but covered by none of the underlying policies listed in the Schedule of Underlying Insurance and by no other insurance providing coverage to the "Insured."

(Umbrella Policy, Doc. 1-2 at 17.)

In order to obtain the Umbrella Policy, the Insured Defendants, through their retail insurance broker, submitted an application (the "Application") for coverage with respect to the Knights Inn Location and other hotel locations. (Doc. 1 ¶ 13.)  The Application required the Insured Defendants to state whether there had been any incidents involving "death," or "violent acts of any kind" at the relevant locations.  (*Id.* ¶¶ 17-18.)  In their Application, the Insured Defendants, via their retail insurance broker, represented that there

3

had been no incidents of "death" or "violent acts of any kind" at the Knights Inn Location. (*Id.* ¶¶ 18-19; Doc. 1-1 at 4.)

In fact, however, there was a double murder at the Knights Inn Location, on or around September 15, 2014. (Doc. 1 ¶ 31.) Shiv Global was aware of the homicides prior to the submission of the Application, and it made misrepresentations on the Application when it stated there had been no "death[s]" at the location. (*Id.* ¶¶ 31, 33). According to Great American, the Insured Defendants' misrepresentations on the Application were material because, had the Insured Defendants disclosed that a double murder occurred at the Knights Inn Location, Great American would not have issued the Umbrella Policy. (*Id.* ¶¶ 32, 34.)

## B. The Underlying Action

Great American first became of aware of the Insured Defendants' misrepresentations on the Application during the course of investigating the Underlying Action, *M.P. v. Shiv Global Hotel, LLC d/b/a Knights Inn and Global Management & Investment Corporation d/b/a Knights Inn*, Civil Action No. 1:24-cv-01205-LMM, filed in the United States District Court for the Northern District of Georgia. (Doc. 1, ¶¶ 27, 30). In the Underlying Action, the plaintiff M.P. (who is a defendant in this matter) alleged that from about April 22, 2016, through April 26, 2016, she was trafficked for commercial sex

4

at the Knights Inn Location, during which time Shiv Global owned the hotel, and GMIC, in cooperation with Shiv Global, operated and managed the hotel. (*Id*. ¶ 25.)  Plaintiff M.P. asserted claims against GMIC and Shiv Global under the Trafficking Victims Protection Reauthorization Act, 15 U.S.C. § 1595(a). (*Id*.)   Per Great American, it first learned of the Insured Defendants' misrepresentations when Great American's representatives reviewed a deposition transcript from the Underlying Action in which the general manager of the Knights Inn Location hotel discussed the murders.  (*Id*. ¶ 30.)

As for the status of the Underlying Action, Plaintiff's complaint in this case expressly stated that the Underlying Action was "pending."  (*Id*. ¶ 24.) The complaint further alleges that Western World Insurance Company, the primary insurer for the Insured Defendants, was defending GMIC and Shiv Global in the Underlying Action.  (*Id*. ¶ 26.)

## II.    Procedural History and Motion to Dismiss

Plaintiff filed its complaint for declaratory relief on January 28, 2025. (Doc. 1.)  On April 25, 2025, the Insured Defendants filed a motion to dismiss Plaintiff's complaint for lack of subject-matter jurisdiction.  (Doc. 14.)  The Insured Defendants argue that Plaintiff's complaint fails to allege a sufficiently immediate and concrete controversy.  (*Id*. at 2.)

On June 5, 2025, Plaintiff filed a response in opposition or, in the alternative, a motion for leave to file an amended complaint. (Doc. 20.) In its response, Plaintiff notified the Court that the Underlying Lawsuit settled after Defendants filed their motion to dismiss. (Doc. 20 at 2; Doc. 20-2.)[3] Plaintiff contends that, if the motion is granted, Plaintiff should be permitted to amend. In its proposed amended complaint, Plaintiff removes its request for a declaration that it does not have any defense or indemnity obligations for the Underlying Action, as well as its request for a declaration that it has no coverage obligations to the Insured Defendants. (Doc. 20-3 at 16.) It also removes M.P. as a party defendant. (*Id.* at 1.) The only claim remaining in the proposed amended complaint is a claim for a declaratory judgment for rescission of the Umbrella Policy. GMIC and Shiv Global oppose amendment on futility grounds.

## III.   Legal Standard

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a claim for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack." *Stalley ex rel U.S. v. Orlando*

---

[3] Plaintiff does not say whether it has been or will be required to contribute to any settlement amount.

*Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (cleaned up). "Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered." *Id.* (cleaned up). "A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice." *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (citing *Crotwell v. Hockman-Lewis Ltd.*, 734 F.2d 767, 769 (11th Cir. 1984)).

## IV.    Discussion

The Insured Defendants contend that Plaintiff's claims for declaratory relief must be dismissed because this case fails to raise a sufficiently immediate and concrete controversy. (Doc. 14-1.) Specifically, the Insured Defendants argue that (1) Plaintiff has not alleged facts to show that a duty to defend has been or will be triggered under the Umbrella Policy; (2) Plaintiff's claim for a declaration regarding its duty to indemnify is unripe because "the

7

underlying suit at issue is still pending[;]" and (3) Plaintiff's claim for a declaration of rescission is unripe until duties under the Umbrella Policy have arisen. (*Id.*)  For the reasons below, the Court agrees with Defendants that Great American's claims for declaratory relief are not ripe for adjudication as pled in the current complaint.

### A. The Declaratory Judgment Act

The Declaratory Judgment Act provides that a federal court may only adjudicate a case for declaratory relief if an "actual controversy" exists. *See* 28 U.S.C.A. § 2201(a); *Sheriff of Broward Cnty. v. Evanston Ins. Co.*, 159 F.4th 792, 803 (11th Cir. 2025); *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995).  As the Supreme Court has explained:

> The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree . . . .  Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a *substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.*

*Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941) (emphasis added); *see also A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210 (11th Cir. 2019); *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985)).  "The controversy must be more than 'conjectural, hypothetical, or contingent; it must be real and immediate, and create a

8

definite, rather than speculative threat of future injury.'" *Sheriff of Broward Cnty.*, 159 F.4th at 804 (quoting *A&M Gerber Chiropractic LLC*, 925 F.3d at 1210). Whether a controversy exists is determined on a case-by-case basis. *Atlanta Gas Light Co.*, 68 F.3d at 414.

Further, "[t]he Declaratory Judgment Act confers on federal courts a 'unique and substantial discretion in deciding whether to declare the rights of litigants.'" *Stevens v. Osuna*, 877 F.3d 1293, 1311 (11th Cir. 2017) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)). Even if there is a case or controversy before it, the district court has discretion in deciding whether to declare the rights of litigants. *Stevens*, 877 F.3d 1293, 1311-12; *Otwell v. Alabama Power Co.*, 747 F.3d 1275, 1280 (11th Cir. 2014) ("[D]istrict courts have exceptionally broad discretion in deciding whether to issue a declaratory judgment, and the remedy is not obligatory.").

**B. Duty to Defend**

Defendants argue that the duty to defend is not ripe. The Court agrees that the complaint's allegations do not show a sufficiently immediate and concrete controversy as to Great American's duty to defend.

Under Georgia law, "[a]n insurer's duty to defend turns on the language of the insurance contract and the allegations of the complaint asserted against the insured." *Nat'l Cas. Co. v. Pickens*, 582 F. App'x 839, 841 (11th Cir. 2014)

9

(quoting *City of Atlanta v. St. Paul Fire & Marine Ins. Co.*, 498 S.E.2d 782, 784 (Ga. Ct. App. 1998)).  In the duty to defend analysis, the terms of the insurance policy are "liberally construed in favor of coverage." *Barrett v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 696 S.E.2d 326, 331-32 (Ga. Ct. App. 2010).  "If the facts as alleged in the complaint *even arguably* bring the occurrence within the policy's coverage, the insurer has a duty to defend the action." *Scott v. Gov't Emples. Ins. Co.*, 700 S.E.2d 198, 201 (Ga. Ct. App. 2010) (citation omitted) (emphasis added).  "Where the claim is one of potential coverage, doubt as to liability and [the] insurer's duty to defend should be resolved in favor of the insured." *Landmark Am. Ins. Co. v. Khan*, 705 S.E.2d 707, 710 (Ga. Ct. App. 2011).

"With respect to an excess insurer's duty to defend, the majority rule is that an excess insurer 'is not obligated to defend its insured until all primary insurance is exhausted or the primary insurer has tendered its policy limits.'" *Davis v. Great N. Ins. Co.*, No. 23-10137, 2024 WL 2815135, at *6 (11th Cir. June 3, 2024) (quoting 14 Couch on Ins. § 200:39 (3d ed. & Nov. 2023 update)).  Georgia follows the majority rule.  *See, e.g.*, *Wellons, Inc. v. Lexington Ins. Co.*, 931 F. Supp. 2d 1228 (N.D. Ga. 2013) (discussing Georgia case law).  There is an exception to the above-stated rule, however, if the primary insurer refuses to defend.  *See, e.g., Motors Ins. Co. v. Auto-Owners Ins. Co.*, 555 S.E.2d 37, 39

10

(Ga. Ct. App. 2001). Also, courts have found that jurisdiction exists over a declaratory judgment action regarding an excess insurer's duty to defend, where the excess insurer denies coverage. *See, e.g., Essex Ins. Co. v. Littlejohn*, No. 1:15-CV-897-MHC, 2016 WL 5340543, at *4 (N.D. Ga. Feb. 12, 2016).

Under the policy at issue here, Great American has the "right and duty to . . . defend any 'suit' seeking damages" covered by the terms of the Policy when: (1) the applicable policy limits of all other insurance providing coverage to the Insured Defendants have been exhausted by actual payment of "claims" for any "occurrence" to which the policy applies; or (2) "damages are sought for any 'occurrence' which is covered by [the] Policy but covered by none of the underlying policies listed in the Schedule of Underlying Insurance and by no other insurance providing coverage to the 'Insured.'" (Doc. 1-2 at 17.)

Great American does not allege any facts in the complaint to suggest that its obligations to defend have been or will be triggered under this provision. Great American's complaint does not allege, for example, that the limits of the underlying policies have been or will be exhausted by payment of claims or that damages are or will be sought for an occurrence that is covered by the Umbrella Policy but not covered by other insurance. Neither does Great American allege that it denied coverage to the Insured Defendants, *cf. Essex Ins. Co.*, 2016 WL 5340543, at *4, or that the primary insurer refused to defend,

11

*cf. Motors Ins. Co.*, 555 S.E.2d at 39.  On the contrary, the complaint expressly alleged that the primary insurer, Western World Insurance Company, was defending the Underlying Action.  (Doc. 1 ¶ 26.)

Interpreting a similar policy provision under similar circumstances, the Southern District of Florida found no justiciable controversy over Great American's declaratory judgment claim asserted against a different insured. The court explained:

> [G]reat American only incurs coverage obligations when the applicable limits of the underlying insurance policies have been exhausted by payment of claims or when damages are sought for an "occurrence" that is covered by Great American's policy but not covered by any of the underlying insurance policies. . . . The Insureds have not alleged that either of these conditions has been met or that the Insureds have requested that Great American defend or indemnify the underlying suit and that Great American has denied any such requests. . . . Not only is the potential injury from Great American contingent on both the outcome of the underlying suit and Great American actually denying the claim, but it is also contingent on the exhaustion of all underlying insurance policies. Such a hypothetical injury does not create a justiciable controversy.

*Axis Surplus Ins. Co. v. Contravest Const. Co.*, 921 F. Supp. 2d 1338, 1344-1345 (M.D. Fla. 2012).

The Court finds the reasoning of *Axis Surplus* persuasive.  Here, just as in *Axis Surplus*, Plaintiff has alleged no facts from which the Court can infer a practical likelihood that Great American will be called upon to defend the

Insured Defendants in the Underlying Action. *See id.; see also Wilshire Ins. Co. v. Crestview Towers Condo. Ass'n, Inc.*, No. 21-23214-CV, 2023 WL 5352777, at *8 (S.D. Fla. June 27, 2023), *report and recommendation adopted,* No. 1:21-CV-23214-DPG, 2023 WL 5350838 (S.D. Fla. Aug. 18, 2023) ("Generally, no case or controversy exists where the excess coverage is contingent on exhaustion of the underlying coverage, and the underlying coverage has not been exhausted."); *Broadhead v. Hartford Cas. Ins. Co.*, 773 F. Supp. 882, 909-910 (S.D. Miss. 1991) (holding that an excess insurance coverage determination presented no actual controversy for purposes of securing a declaratory judgment without any indication that the underlying coverage would be exhausted). For the foregoing reasons, the Court finds that the complaint's allegations fail to show a substantial controversy of sufficient immediacy to warrant the issuance of a declaratory judgment on the duty to defend.

### C. Duty to Indemnify

Defendants argue that Great American's request for declaratory relief as to its duty to indemnify is not ripe because the complaint expressly alleges that no judgment has been entered against the Insured Defendants in the Underlying Action. The Court agrees that Great American's claim for a declaration of no duty to indemnify was not ripe when the complaint was filed.

13

Most courts in this circuit "have ruled that an insurer's duty to indemnify is not ripe until the underlying lawsuit is resolved or the insured's liability is established." *Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768, 770 (11th Cir. 2019); *see Sullivan v. Everett Cash Mut. Ins. Co.*, No. 19-11943, 2023 WL 1521579, at *4 (11th Cir. Feb. 3, 2023) ("[A] declaratory judgment claim with respect to indemnification is generally not ripe until (and if) the insured has been held liable to a third party."); *James River Ins. Co. v. Ultratec Special Effects Inc*, 22 F.4th 1246, 1252 (11th Cir. 2022) ("Recognizing that the duty to indemnify cannot be determined at a 'preliminary stage in the proceedings,' district courts in our circuit have declined to address the duty to indemnify when determining whether there is a duty to defend."); *see also Allstate Ins. Co. v. Emp'rs Liab. Assur. Corp.,* 445 F.2d 1278, 1281 (5th Cir. 1971) ("[N]o action for declaratory relief will lie to establish an insurer's liability in a policy clause contest . . . until a judgment has been rendered against the insured since, until such judgment comes into being, the liabilities are contingent and may never materialize"); *Am. Fid. & Cas. Co. v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co.*, 280 F.2d 453, 461 (5th Cir. 1960) ("[I]t is not the function of a United States District Court to sit in judgment on these nice and intriguing questions which today may readily be imagined, but may never in fact come to pass."); R. Steven

14

Rawls et al., 1 Law & Prac. of Ins. Coverage § 12:11 (July 2022 update) ("[A]s a general rule, the duty to indemnify is not ripe for adjudication unless and until the insured is held liable in the underlying suit.").[4]

In reaching this conclusion, courts have reasoned that, unless and until there is an adverse judgment against the insured, "the liabilities are contingent and may never materialize." *Allstate Ins.*, 445 F.2d at 1281. That is, "if the insured prevail[s] in the underlying lawsuit, the court would not have to reach the issue of whether the insured was entitled to indemnification, and the time and effort the court and the parties would have expended in resolving the issue would be wasted." *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Hethcoat & Davis, Inc.*, 339 F. Supp. 3d 1248, 1258 (N.D. Ala. 2017); *see Mid-Continent Cas.*, 766 F. App'x at 770 (explaining that a declaratory judgment action is not ripe where the issue in dispute "may never arise" (quoting *American Fidelity & Casualty Co.*, 280 F.2d at 461)); *Coca-Cola Sw. Beverages LLC v. Marten Transp., Ltd.*, No. 1:21-CV-4961-TWT, 2023 WL 5051353, at *5 (N.D. Ga. Aug. 7, 2023) ("Unlike with the duty to defend, the question of whether Marten

---

[4] *Cf. Allstate Vehicle & Prop. Ins. Co. v. Jawanda*, 728 F. Supp. 3d 1246, 1251 (N.D. Ga. 2024) ("[T]his Court will decline to follow subsequent unreported cases from panels of the Eleventh Circuit that suggest disputes about indemnification under an insurance policy are not ripe until the insured has been held liable to a third party.").

Transport is required to indemnify Coca-Cola Southwest might never arise if Coca-Cola Southwest defeats Gero's claims in the first place.").

In its response, Plaintiff does not dispute the foregoing principles. It instead argues that its request for a declaration that it has no duty to indemnify the Insured Defendants in the Underlying Action is "entirely derivative of, and dependent upon its claim for rescission, which itself presents a live controversy irrespective of the Underlying Lawsuit." (Doc. 20 at 9-10.) The Court discusses the claim for a declaration of rescission in the next section.

### D. Rescission

Great American contends that its claim for a declaration of rescission is a live, actual controversy and is justiciable regardless of whether there is any pending underlying lawsuit or claim. It submits that, irrespective of the Underlying Action, it presently has a legal interest in rescinding an insurance policy secured through material misrepresentation. (Doc. 20 at 10.)

As stated above, in all cases arising under the Declaratory Judgment Act, the threshold inquiry is whether a justiciable controversy exists. *See Atlanta Gas Light*, 68 F.3d at 414. "The basic question 'is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"

16

*Sheriff of Broward Cnty.*, 159 F.4th at 804 (quoting *Maryland Cas.*, 312 U.S. at 273). "To establish a justiciable controversy and standing, 'the plaintiff must allege facts from which it appears that there is a substantial likelihood that he will suffer injury in the future.'" *Id.* (quoting *A&M Gerber Chiropractic*, 925 F.3d at 1211). "[I]f a plaintiff does not assert a reasonable expectation of future injury, he lacks standing to bring an action for declaratory relief." *Id.*

The Court agrees with Defendants that Great American's claim for a declaratory judgment of rescission is not ripe for adjudication as pled. As discussed above, Plaintiff's claim for a declaratory judgment as to its duties to defend and indemnify does not present a sufficiently concrete and immediate controversy. An examination of the complaint reveals no other facts from which the Court can plausibly infer any substantial controversy here.

The complaint alleges that Great American would not have issued the Policy absent Defendants' alleged misrepresentations. (Doc. 1 ¶¶ 32, 34.) But Plaintiff does not indicate how the Policy's mere existence causes Plaintiff to suffer a concrete, actual, or threatened injury. For instance, setting aside the Underlying Action discussed above, Plaintiff does not identify any claim or potential claim or liability that has arisen or may arise in the absence of a

17

declaration of rescission.[5]   Nor can the Court simply infer that such hypothetical claims or liabilities might emerge following the resolution of the Underlying Action.  *Emory*, 756 F.2d at 1552 ("The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred.").  This is especially so since the policy at issue covers a period that ended nearly a decade ago (*i.e.*, November 26, 2015, to November 26, 2016).  Neither does Plaintiff allege in its complaint any concrete way in which it would stand to benefit from rescission, in the absence of a pending or threatened claim.

Although decided under Florida law, the Southern District of Florida's decision in *Ironshore Indem., Inc. v. Banyon 1030-32, LLC*, No. 10-60285-CIV, 2010 WL 11601098, at *3 (S.D. Fla. May 28, 2010), is instructive.  In *Ironshore*, as in this case, the plaintiff was an excess insurer suing for a declaration of rescission after its insured misrepresented certain information in its insurance application.  *Id.*, at *1.  Just as in this case, the excess insurer in *Ironshore* asked the district court to declare that its policy was void *ab initio* based on the insured's misrepresentations.  *Id.*  The district court, however, found that because the underlying coverage was not exhausted, the excess insurer had not

---

[5] Plaintiff, moreover, seeks leave to amend to *delete* its claim for a declaration that it has no duty to defend or indemnify Defendants GMIC and Shiv Global in connection with the Underlying Action.  (Doc. 20 at 15.)

alleged a case or controversy sufficient to support jurisdiction. *Id.* at * 2. As relevant to the present discussion, the district court also held that the "lack of an actual case or controversy is *fatal [ ] to the claim for declaration of rescission*" because "without an immediate threat of future injury to Ironshore, the Court might very well be deciding purely hypothetical issues." *Id.* at *2-3 (emphasis added); *see also Wilshire Ins.*, 2023 WL 5352777, at *9 (finding that an excess insurer's rescission claim was not ripe for adjudication, after determining that the duty to defend and duty to indemnify claims were unripe).[6]

Plaintiff protests that it should be permitted to proceed on a standalone claim for a declaratory judgment for rescission, even without any pending or reasonably likely claim. The Court does not doubt that a standalone claim for a declaration of rescission *could* present a justiciable controversy under certain

---

[6] In *Wilshire Ins.*, the court stated:

> GA Alliance sought a declaration of no coverage under the exclusions relating to its duty to defend and indemnify; thus, GA Alliance's failure to allege an actual case or controversy kills its duty to defend claim, its duty to indemnify claim, and its rescission claim. GA Alliance cites to no case that allowed an excess insurer's rescission claim to survive after the no duty to defend or indemnify claims were dismissed for lack of ripeness. Therefore, GA Alliance's rescission claim is similarly not ripe.

2023 WL 5352777, at *9.

19

circumstances.  For example, in *Republic Ins. Co. v. Masters, Mates & Pilots Pension Plan*, 77 F.3d 48 (2d Cir. 1996), a dispute between two co-insurers, the Second Circuit held that the district court erred in concluding that an insurer's rescission claim was not justiciable, explaining that the insurer's "claim to rescind its policies [was] by itself a justiciable controversy."  *Id*. at 51.  In *Republic Ins.,* however, it was "beyond dispute" that the plaintiff had a "practical interest in such rescission[.]"  *Id*. at 52.  As the Second Circuit explained, the plaintiff-insurer was involved in litigation that turned on the validity of its policies, and if the plaintiff-insurer were to prevail on its rescission claim, then "its policies were void from the start."  *Id.*  Further, the plaintiff-insurer seeking rescission in *Republic Ins*. faced other litigation in which the validity of its policy could be determinative.  *Id.*

None of the "practical interests" discussed in *Republic Ins.* are present in this case.  Speculation that such interests might possibly arise in the future is insufficient to show a current or likely actual controversy.  *Owners Ins. Co. v. Hufstetler*, No. 2:23-CV-20-RWS, 2023 WL 6194308, at *3 (N.D. Ga. Aug. 4, 2023) ("A declaratory judgment action should not be used as a means for securing an advisory opinion in a controversy which has not arisen." (internal quotations omitted)).

Plaintiff, moreover, has not presented the Court with any case from any jurisdiction in which a claim for a declaration of rescission was found to be justiciable, without an underlying coverage claim, a practical likelihood of a future claim, or some other articulable harm on the horizon.  To the contrary, as discussed above, courts presented with similar claims have found them to be non-justiciable.  *See Ironshore Indem.*, 2010 WL 11601098, at *3; *Wilshire Ins.*, 2023 WL 5352777, at *9.

Plaintiff contends that this case presents a controversy because Plaintiff is required under Georgia law to seek rescission promptly after learning facts supporting the request to rescind.  (Doc. 20 at 11-12 (*citing, e.g., Am. Safety Indem. Co. v. Sto Corp.*, 802 S.E.2d 448, 455 (Ga. Ct. App. 2017) ("[U]nder Georgia law, an insurer seeking to rescind a policy must make "[a]n announcement of the intent to rescind the contract . . . in a timely fashion, as soon as the facts supporting the claim for rescission are discovered.").)  However, as Defendants point out, (Doc. 23 at 8), Georgia's requirement that rescission be prompt does not obviate the need for a plaintiff in a declaratory judgment action to allege facts showing it is practically likely to experience some injury absent the requested declaration.  Moreover, Plaintiff has not cited any case in which a court found a live controversy as to a claim for a declaration

21

of rescission, based solely on Georgia's requirement that rescission be prompt, and without any underlying claim or controversy.

Finally, even assuming Plaintiff had sufficiently articulated a case or controversy, the Court would exercise its discretion to decline to declare the rights of the litigants under the complaint as currently pled. *See Stevens*, 877 F.3d at 1311 (discussing the district court's "substantial discretion" in deciding whether to declare the rights of litigants). The facts alleged in the complaint are focused almost entirely on the claims for declaratory relief as they relate to the Underlying Action. Although Plaintiff asserts in briefing that it would "continue to be injured by having to maintain coverage" for the Knights Inn Location, even without an underlying lawsuit, (Doc. 20 at 11), it does not allege how it will be so harmed. Neither does it explain why it could not, in the alternative, pursue *an action* for rescission, rather than seek *a declaration* under the Declaratory Judgment Act that the Umbrella Policy is void *ab initio*. *See Dodds v. Dabbs, Hickman, Hill & Cannon, LLP*, 750 S.E.2d 410, 414 (Ga. Ct. App. 2013) (explaining the cause of action for rescission under Georgia law); *see also Novare Grp., Inc. v. Sarif*, 718 S.E.2d 304, 307 (Ga. 2011) ("In general, a party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud."); *Brown v. Techdata*

22

*Corp.*, 234 S.E.2d 787, 791 (Ga. 1977) (explaining the distinction between rescission "at law," where a "plaintiff rescinds the contract himself by restoring, or making a bona fide offer to restore, to the defendant the fruits of the contract[,]" and rescission "at equity," where a "plaintiff seeks to invoke the affirmative powers of a court of equity to rescind, or undo, the contractual transaction").

Given the facts alleged, the Court finds that the prudent approach is to grant the motion to dismiss without prejudice. *See, e.g., Republic-Franklin Ins. Co. v. Donat Ins. Servs., LLC*, No. 20-CV-875-WMC, 2021 WL 3403801, at *3 (W.D. Wis. Aug. 4, 2021) (dismissing the plaintiff's case without prejudice to refiling, where the plaintiff-insurer sought rescission based on the insured's misrepresentation, but no claim or suit had been filed against either party presently before the court).

### E. Leave to Amend

When a party is not entitled to amend its pleading as a matter of course, it must obtain the opposing party's consent or the court's permission to file an amendment. Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) provides that a court should "freely" give leave to amend a pleading "when justice so requires." *Id.* Although a discretionary decision, the Eleventh Circuit has stated that "district courts should generally exercise their discretion in favor of allowing

amendments to reach the merits of a dispute." *Pinnacle Adver. & Mktg. Grp. Inc. v. Pinnacle Adver. & Mktg. Grp., LLC*, 7 F.4th 989, 1000 (11th Cir. 2021). Additionally, "where a more carefully drafted complaint might state a claim, a plaintiff must be given *at least one* chance to amend the complaint before the district court dismisses the action with prejudice." *Garcia v. Chiquita Brands Int'l, Inc.*, 48 F.4th 1202, 1220 (11th Cir. 2022) (citation omitted). Under Rule 15(a), a district court need not give leave to amend under three circumstances: "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Id.* (citation and alteration omitted).

Great American advises the Court that, since it filed its complaint, the Underlying Action has settled. Great American asks that, if the Court grants the motion to dismiss, it be allowed to amend the complaint to:

> (1) remove its request for a declaration that it "has no obligations to Defendants GMIC and Shiv Global for coverage under the Umbrella Policy"; (2) remove its request for a declaration that it "has no duty to defend or indemnify Defendants GMIC and Shiv Global in connection with the Underlying Lawsuit"; (3) remove M.P. as a Defendant from this lawsuit; and (4) allege additional facts regarding this Court's jurisdiction over Great American's rescission claim.

24

(Doc. 20 at 15.)  Defendants oppose Plaintiff's motion for leave to amend on the ground of alleged futility.  (Doc. 23.)

Leave to amend a complaint is considered futile "when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007).  The Court recognizes that the facts in this case evolved significantly in between the filing of the complaint and the motion to dismiss. Great American requests that it be given an opportunity to add facts to shore up its rescission claim.

The Court does not consider Plaintiff's request to be facially frivolous. *See United States ex rel. Crutcher v. First Guar. Mortg. Corp.*, No. 1:16-CV-3812-TWT, 2023 WL 4034197, at \*4 (N.D. Ga. June 15, 2023) (granting leave to amend over futility objection where proposed amendments "d[id] not appear to be facially frivolous"); *see also* 6 Wright & Miller, Federal Practice and Procedure § 1487 (3d ed. July 2022 update) ("If a proposed amendment is not clearly futile, then denial of leave to amend is improper.").  Further, as explained above, the ripeness inquiry is applied on a case-by-case basis, *Atlanta Gas Light Co.*, 68 F.3d at 414, and it is not impossible that intervening developments in the Underlying Lawsuit may now permit Plaintiff to plead a sufficiently concrete controversy with respect to its declaratory rescission

25

claim.  Of course, however, "the granting of the motion to amend does not prevent Defendants from filing a motion to dismiss the complaint as amended." *Masis Staffing Sols., LLC v. Triangle Grp. Companies, Ltd. Liab. Co.*, No. 1:22-CV-2754-MHC, 2022 WL 20689591, at *4 (N.D. Ga. Dec. 9, 2022).  Should Defendants file a motion to dismiss Plaintiff's amended complaint, they may ultimately prevail; but the Court would prefer to make that determination with the benefit of a clear record and briefing tailored to the particular allegations asserted in the amended complaint.  Because leave to amend should be "freely" given, Fed. R. Civ. P. 15(a)(2), and this is the first amendment sought by Plaintiff, the Court will grant Plaintiff's request to amend.  The Court also notes that, in light of its guidance above, Plaintiff may file an amended complaint that differs from the proposed amended complaint that it attached to its responsive brief.  (Doc. 20-2.)

## V.    Conclusion

For the reasons stated above, Defendants' motion to dismiss, (Doc. 14), is **GRANTED**, but Plaintiff is granted leave to amend.  If Plaintiff wishes to proceed with this case, Plaintiff is directed to file an amended complaint within 14 days of the date of this order.

**SO ORDERED** this 30th day of March, 2026.

_____
SARAH E. GERAGHTY
United States District Judge