IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GREAT AMERICAN ALLIANCE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>GLOBAL MANAGEMENT & INVESTMENT CORPORATION, SHIV GLOBAL HOTEL, LLC,<br><br>Defendants. | CIVIL ACTION FILE NO.<br>1:25-CV-00375-SEG |

## DEFENDANTS GLOBAL MANAGEMENT & INVESTMENT CORPORATION AND SHIV GLOBAL HOTEL, LLC'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendants Global Management & Investment Corporation ("Global Management") and Shiv Global Hotel, LLC ("Shiv") (collectively "Defendants"), pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), hereby file their Motion to Dismiss Great American Alliance Insurance Company's ("Great American") Amended Complaint, showing the Court as follows:

## INTRODUCTION

Only two weeks after this Court dismissed Great American's original Complaint for lack of an actual case or controversy, Great American filed its Amended Complaint — which is virtually identical to the Great American's original

1

Complaint except that Great American has now pleaded additional facts related to two new lawsuits and added a state-law claim under O.C.G.A. § 33-24-7 for equitable rescission. (*Compare* Doc. 1, *with* Doc. 31.) However, neither of these inconsequential changes serves to establish jurisdiction since Great American continues to fail to allege "an underlying coverage claim, a practical likelihood of a future claim, or some other articulable harm on the horizon." (Doc. 30 at 21.) As a result, the Court continues to lack subject-matter jurisdiction over Great American's claims, requiring dismissal of Great American's Amended Complaint.

### ALLEGATIONS IN GREAT AMERICAN'S COMPLAINT

This case concerns Great American's contractual obligation to Global Management and Shiv. Three lawsuits are relevant to Great American's claims here: *M.P. v. Shiv Global Hotel, LLC d/b/a Knights Inn and Global Management & Investment Corporation d/b/a Knights Inn*, No. 1:24-cv-01205-LMM (N.D. Ga.) (the "M.P. Lawsuit"); *I.D. v. Hare Krishna Decatur Hotel, LLC d/b/a Motel 6*, No. 1:25-cv-06790-AT (N.D. Ga.) (the "I.D. Lawsuit"); and *K.S. v. Hare Krishna Decatur Hotel, LLC d/b/a Motel 6*, No. 1:26-cv-01375-TRJ (N.D. Ga.) (the "K.S. Lawsuit"). All three lawsuits raise claims against Global Management and Shiv based on the underlying plaintiffs allegedly being sex trafficked at 2859 Panola Rd., Lithonia, GA 30058 (the "Property"), a property owned and operated by Shiv and Global Management. (*Id.* ¶¶ 13, 14, 26, 34.) Great American alleges the M.P. Lawsuit settled in May 2025 and

that the I.D. Lawsuit and the K.S. Lawsuit (together, the "pending lawsuits") were filed soon after. (Doc. 31 ¶¶ 10, 13, 14.)

Great American alleges that it issued an umbrella and excess liability insurance policy (the "Umbrella Policy") as part of a $25 million excess tower for the period of November 26, 2015 to November 26, 2016. (*Id*. ¶ 31.) The Umbrella Policy sits on top of other primary policies including a primary policy issued by Western World Insurance Company that covers the Property for the period of November 30, 2015 to November 26, 2016, with a $1,000,000 limit for individual claims and a $2,000,000 aggregate limit. (*Id*. ¶ 43.) The Umbrella Policy is contained in Great American's Master Policy Number UM 3718488 issued to Select Hospitality Insurance Group, Inc., a risk purchasing group, which was in effect from July 31, 2015 to July 31, 2017. (*Id*. ¶ 32.) At the very core of the Amended Complaint is Great American's assertion that after the M.P. Lawsuit settled, "at most $719,500" was left in the Western World Insurance Company primary policy to settle the pending lawsuits and, further, there exists a sufficient likelihood that Great American's Umbrella Policy will be implicated through ongoing litigation and erosion of the primary policy so as to endow this Court with federal jurisdiction. (*Id*. ¶¶ 48, 51, 61.)

Great American contends it issued the Umbrella Policy based on representations made by Defendants in their insurance application. (*Id*. ¶ 62.) Great

3

American asserts that Global Management represented no incidents involving "Death" or "assault, robbery or violent acts" occurred on the Property. (*Id.* ¶ 28.) Great American alleges that in its investigation of the M.P. Lawsuit it purportedly learned that this representation was incorrect. Discovery in the M.P. Lawsuit suggests a double homicide occurred on the Property in 2014. (*Id.* ¶¶ 35–38.) Based on this alleged misrepresentation, Great American seeks a "prospective declaration" of its right to rescind the Umbrella Policy in addition to "an order rescinding and declaring void *ab initio* the Umbrella Policy as applied to the [property]" under O.C.G.A. § 33-24-7. (*Id.* ¶¶ 58, 63.)

Notably, Great American does not allege that the underlying limits of the Western World Insurance Company policy have been exhausted or that Western World Insurance Company denied coverage in any of the three cases. (*See generally* Doc. 31.) Furthermore, Great American does not allege that it has denied coverage. Accordingly, based on the allegations in the Amended Complaint, Great American's Umbrella Policy has not been triggered and will not be triggered until the remaining limits in the Western World Insurance Company primary policy are eroded in a matter which implicates the Umbrella Policy.

## ARGUMENT AND CITATION TO AUTHORITY

### A.    Standard For Motion To Dismiss Under Rule 12(b)(1) and 12(b)(6)

A federal court is presumed to lack subject-matter jurisdiction until a plaintiff

4

establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack." *Stalley v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). "[T]he facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003). On a motion to dismiss under Rule 12(b)(1) by facial attack, "the court [is required] merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Stalley*, 524 F.3d at 1232. "When defending against a facial attack, the plaintiff has safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised." *Id.* at 1233. In evaluating a motion to dismiss under Rule 12(b), the complaint's factual allegations are assumed true and construed in the light most favorable to the complainant. *Hardy v. Regions Mortgage, Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006); *M.T.V. v. DeKalb County Sch. Dist.*, 446 F.3d 1153, 1156 (11th Cir. 2006). "While a complaint . . . does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).

**B.    Plaintiff's Declaratory Judgment Claim Is Not Ripe For Adjudication**

The second count of the Amended Complaint seeks declaratory judgment. The federal Declaratory Judgment Act provides that a federal court may only adjudicate a case for declaratory relief if an "actual controversy" exists. 28 U.S.C. § 2201(a); *see also Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937) (noting that Article III's "cases" or "controversies" requirement is reflected in the Declaratory Judgment Act's "actual controversy" requirement). A court may enter a declaratory judgment only where there is a "definite and concrete" controversy. *Miccosukee Tribe of Indians of Fla. v. Kraus-Anderson Constr. Co.*, 607 F.3d 1268, 1275 n.14 (11th Cir. 2010). A declaratory judgment may not be "an opinion advising what the law would be upon a hypothetical state of facts." *Owners Ins. Co. v. Parsons*, 610 F. App'x. 895, 897 (11th Cir. 2015). If the party's claim is threat of future injury, "[t]here must be a substantial likelihood that the plaintiff will suffer [such] future injury: a 'perhaps' or 'maybe' chance is not enough." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999). Even a "well-founded" concern of future injury is not enough to create a justiciable controversy if it is based on speculation. *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 415 (11th Cir. 1995). Rather, the concern must be "real and immediate." *Moore v. Accenture, LLP*, No. 1:04CV3717-TWT, 2005 WL 1712847, at *3 (N.D. Ga. May 6, 2005).

The binding case law in this circuit has held that "no action for declaratory

relief will lie to establish an insurer's liability in a policy clause contest . . . until a judgment has been rendered against the insured since, until such judgment comes into being, the liabilities are contingent and may never materialize." *Evanston Ins. Co. v. Dillard House, Inc.*, No. 2:16-cv-249-RWS, 2017 WL 3498953, at *4 (N.D. Ga. June 28, 2017) (quoting *Allstate Ins. Co. v. Employers Liab. Assur. Corp.*, 445 F.2d 1278, 1281 (5th Cir. 1971)). "An insurer's duty to indemnify is not ripe for adjudication in a declaratory judgment action until the insured is in fact held liable in the underlying suit." *Auto-Owners Ins. Co. v. Deerlake Homeowners Ass'n, Inc.*, No. 2-11-CV-215-RWS, 2012 WL 1038748, at *3 (N.D. Ga. Mar. 27, 2012) (citing *Penn-America Ins. Co. v. Disabled Am. Veterans, Inc.*, 268 Ga. 564 (1997)).

*Axis Surplus Insurance Co. v. Contravest Construction Co.*, 921 F. Supp. 2d 1338 (M.D. Fla. 2012), provides guidance as to how this Court should assess the ripeness of an excess insurer's claim for a declaration on its duties under an insurance contract. In *Axis,* a primary insurer brought suit seeking a declaration as to whether it had a duty to indemnify. *Id.* at 1341. The insured filed a third-party complaint naming various insurers, including an excess insurer, seeking a declaration of their duties under the respective policies. *Id.* The excess insurer argued that the court lacked jurisdiction because coverage under its policies would not be triggered unless the applicable limits of the underlying insurance policies had been exhausted or the damages sought were covered by the excess policy but not the

7

underlying insurance policy. *Id.* at 1344–45. The court explained that the insureds failed to allege that either of the conditions had been met or that the insurers had denied coverage. *Id.* at 1345. The court explained that not only was the potential injury from the excess insurer contingent on both the outcome of the underlying suit and the excess insurers actually denying the claim, but it was also contingent on the exhaustion of all underlying insurance policies. *Id.* The court concluded that such a hypothetical injury did not create a justiciable controversy. *Id.; see also Goodyear Tire & Rubber Co. v. Nat'l Union Ins. Co.*, 2009 WL 3518070, *4 (N.D. Ohio Oct. 23, 2009) (dismissing declaratory action involving excess insurer for lack of case or controversy despite demand sufficient to reach into excess layer because it was undisputed that the underlying layer was not exhausted and that excess coverage was contingent on exhaustion); *Providence Journal Co. v. Travelers Indem. Co.*, 938 F. Supp. 1066, 1080 (D.R.I. 1996) (holding no controversy existed as to excess insurer where there was no evident probability that underlying policies would be exhausted); *Broadhead v. Hartford Cas. Ins. Co.*, 773 F. Supp. 882, 909 (S.D. Miss. 1991) (holding excess insurance coverage determination presented no actual controversy for purposes of securing a declaratory judgment without any indication that underlying coverage would be exhausted).

Furthermore, the right to rescission does not ripen until duties under the insurance policy have arisen. In *Ironshore Indem., Inc. v. Banyon 1030-32, LLC*,

No. 0:10-cv-60285-UU, 2010 WL 11601098, at *1 (S.D. Fla. May 28, 2010), an excess insurer sought declaration as to its duty to indemnify as well as its right to rescission. *Id.* at *1.[1] The *Ironshore* court, *sua sponte*, raised the issue of whether the excess insurer had pled the existence of a case or controversy. *Id.* The court noted that the complaint contained no allegations that the underlying coverage had been exhausted and, without such allegations, the court concluded there was no case or controversy providing federal jurisdiction. *Id.* at *2–3; *see also Wilshire Ins. Co. v. Crestview Towers Condo. Ass'n, Inc.*, No. 1:21-cv-23214-EGT, 2023 WL 5352777, at *9 (S.D. Fla. June 27, 2023), *report and recommendation adopted*, No. 1:21-cv-23214-DPG, 2023 WL 5350838 (S.D. Fla. Aug. 18, 2023) (dismissing declaratory judgment action for lack of subject-matter jurisdiction against excess insurer seeking declaration of its duties to indemnify and defend and right to rescission).

Lastly, whether intentional or unintentional, Great American's Amended Complaint plays a legal shell game with the three underlying cases, glossing over the fact that the I.D. Lawsuit implicates **neither** Western World Insurance Company primary policy **nor** Great American's Umbrella Policy. As Great American admits, the allegations underlying the I.D. Lawsuit are limited to "October 2017 through

---

[1] Indeed, this Court has already acknowledged that "the Southern District of Florida's decision in *Ironshore* . . . is instructive" on this issue. (Doc. 30 at 18.)

February 2021." (Doc. 31 ¶ 13.) However, the coverage periods for both the Western World Insurance Company primary policy and Great American's Umbrella Policy are limited to November 2015 to November 2016. (*Id.* ¶¶ 23, 43.) As a result, the Court does not need to entertain the risk of any future jury award or settlement in the I.D. Lawsuit when determining whether a "substantial likelihood" exists that Great American's Umbrella Policy will be triggered, contrary to Great American's statement that both "the K.S. and/or I.D. Lawsuits" could erode the primary policy and trigger Great American's Umbrella Policy. (*Id.* ¶ 61.) Instead, the Court is left with predicting the outcome of a single matter filed only three months ago — a matter in which a settlement or jury award may be in the distant future, if it occurs at all — and a far cry from the jurisdictional requirement that Great American's prospective injury constitute a "real and immediate" harm. *Moore*, 2005 WL 1712847, at *3.

In the absence of a real and immediate threat of future injury, Great American invites the Court to speculate on whether a jury award or settlement in the K.S. Lawsuit could erode the remainder of the Western World Insurance Company primary policy at some point in the future.[2] But, such an invitation does not endow

---

[2] Notably, earlier this month, Global Management joined a partial motion to dismiss the claims raised in the K.S. Lawsuit. *See K.S. v. Hare Krishna Decatur Hotel, LLC d/b/a Motel 6*, No. 1:26-cv-01375-TRJ (N.D. Ga.) (Doc. 13-1.) If Global Management were to succeed on that motion, the likelihood that Great American's Umbrella Policy could be later implicated will, of course, decrease.

this Court with jurisdiction. *See Am. Fid. & Cas. Co. v. Penn. Threshermen & Farmers' Mut. Cas. Ins. Co.*, 280 F.2d 453, 461 (5th Cir. 1960) ("[I]t is not the function of a United States District Court to sit in judgment on these nice and intriguing questions which today may readily be imagined, but may never in fact come to pass."). Accordingly, no active case or controversy currently exists which would provide this Court subject-matter jurisdiction, and therefore, the Court should dismiss Great American's request for "prospective" declaratory relief.

## C.    Plaintiff's Equitable Rescission Claim Is Not Ripe For Adjudication

Perhaps in recognition that simply pointing the Court to an unresolved lawsuit is insufficient to cure Plaintiff's defect in pleading and establish federal jurisdiction over its declaratory judgment claim, Great American also raises a state-law claim under O.C.G.A. § 33-24-7. (Doc. 31 ¶¶ 59–63.) But Great American fails to understand that federal jurisdiction cannot be expanded by state statute.[3]

The jurisdictional requirement for a "case or controversy" stems from Article III of the Constitution, which sets the outer limits within which Congress can confer

---

[3] Although the majority of jurisdictional case law in similar matters arises out of declaratory judgment actions, it is important to note that the federal Declaratory Judgment Act does not furnish federal jurisdiction. *See California v. Texas*, 593 U.S. 659, 660 (2021) ("Instead, just like suits for every other type of remedy, declaratory-judgment actions must satisfy Article III's case-or-controversy requirement."). Accordingly, Great American cannot sidestep the jurisdictional case law discussed *supra* by seeking rescission under a state statute.

jurisdiction on federal courts. *See* U.S. CONST. art. III, § 2, cl. 1; *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016), *as revised* (May 24, 2016); *see also Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1244 (11th Cir. 1998) ("Because the judiciary is unelected and unrepresentative, the Article III case-or-controversy limitation, as embodied in the justiciability doctrine, presents an important restriction on the power of the federal courts."). Article III does not contain any provision permitting states to abrogate its jurisdictional limitations or expand its scope. Indeed, the Supreme Court has made clear that claims raised under state statutes must still satisfy Article III's jurisdictional requirements. *See Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013) ("[S]tanding in federal court is a question of federal law, not state law. And no matter its reasons, the fact that a State thinks a private party should have standing to seek relief for a generalized grievance cannot override our settled law to the contrary."); *see also ASARCO Inc. v. Kadish*, 490 U.S. 605, 617–18 (1989) (acknowledging that had the plaintiffs originally filed their state law claims in federal court, a federal court would have been correct to dismiss their claims for failure to satisfy jurisdictional requirements).

Moreover, the statute relied upon by Great American as the basis for its rescission claim specifically discusses whether incorrect statements in applications prevent recovery under a policy or contract. O.C.G.A. § 33-24-7(b). At this point, there is no claim against the policy for coverage. The Court has already dismissed

this claim as unripe, and nothing changed over the two weeks between the dismissal and the filing of the Amended Complaint. As no claim is ripe nor a question of recovery under the Great American Policy at issue before the Court, the rescission count in the Amended Complaint does not create a case or controversy necessary for this Court to retain jurisdiction. *See Wilshire Ins. Co*, 2023 WL 5352777, at \*9 ("GA Alliance's rescission claim is also not ripe for adjudication [ ] [b]ecause there has been no judgment rendered against the Defendants and the underlying coverage has not been exhausted."); *Northland Ins. Co. v. Crane*, No. 02C7388, 2005 WL 831282, at \*3 (N.D. Ill. Apr. 7, 2005) (holding insurance company had not established federal jurisdiction over claims for "reformation and/or recission" where the insurance company had "suffered no actual injury and none is imminent").Thus, and for the same reasons this Court does not have jurisdiction over Great American's declaratory judgment claim, this Court also does not possess jurisdiction over Great American's state law claim.

**D.    Plaintiff's Equitable Rescission Claim Fails as a Matter of Law**

Even if the Court were to exert federal jurisdiction over Plaintiff's state-law claim for equitable rescission — and to be clear, it should not — Great American's state law claim for equitable rescission should be dismissed because of the plain language of the Policy. Specifically, Great American contractually waived its state law rights to seek rescission based on a failure to disclose hazards. The Umbrella

Policy contains a provision, Condition U, which expressly states that an insured's failure to disclose all hazards existing as of the inception date of the policy "will not prejudice that 'Insured's' insurance with respect to the coverage afforded by this Policy," provided such failure was not intentional on the part of the insured and was reported to the insurer as soon as practicable after discovery. (Doc. 31-2 at 39–40.) Condition U thus deviates from the rescission framework set forth in O.C.G.A. § 33-24-7, by affording Defendants a contractual safe harbor that the statute does not provide: so long as the failure to disclose was unintentional and timely reported, the insured's coverage remains unimpaired. By agreeing to this provision, Great American waived any argument that it may rescind the Umbrella Policy on the basis of a failure to disclose hazards, because the very contract it seeks to rescind forecloses that remedy absent a showing of intentional nondisclosure or untimely disclosure. *See Modern Carpet Indus., Inc. v. Factory Ins. Ass'n*, 125 Ga. App. 150, 151 (1971) ("[R]egardless of the form of the action, if the source of the right claimed has evolved from a written contract of insurance, the limitations contained in it supersede any other general statutory limitations."). And any allegation of intentional disclosure would be subject to the heightened pleading standard in Rule 9(b). *See Sanchez v. United Collection Bureau, Inc.*, No. 1:07-CV-2478-TWT-GGB, 2008 WL 11407377, at *2 (N.D. Ga. Feb. 6, 2008). Plaintiff, however, includes no allegation of any intentional misrepresentation, nor any claims of delayed disclosure.

14

Plaintiff's failure to include such allegations serves as a death knell to rescission claim.

This is not a matter that can be cured on repleading. Plaintiff has contracted around the statutory provision it relies upon, barring any claim based on the statute. Even if Plaintiff were to bring the claim under the contractual provisions, Plaintiff could never satisfy the intentionality requirement of Condition U because the insurance agreement was signed not by the Defendant itself but by its broker. Great American therefore could never establish that any failure to disclose was intentionally fraudulent on the part of *Defendants*. (Doc. 31 ¶ 29.) Accordingly, Plaintiff's statutory rescission claim fails as a matter of law and should be dismissed with prejudice.

## <u>CONCLUSION</u>

For the foregoing reasons the Court should grant Global Management and Shiv's Motion to Dismiss Plaintiff's Amended Complaint, dismiss Great American's Amended Complaint, and provide such other relief as the Court deems just and proper.

Respectfully submitted this 27th day of April, 2026.

/s/ D. Austin Bersinger
D. Austin Bersinger
Georgia Bar No. 144792
David J. Sandefer
Georgia Bar No. 268834
BARNES & THORNBURG LLP
3340 Peachtree Road N.E., Suite 2900
Atlanta, Georgia 30326
Tel. (404) 846-1693
Fax (404) 264-4033
Email: austin.bersinger@btlaw.com
Email: dsandefer@btlaw.com

*Counsel for Global Management &
Investment Corporation and Shiv
Global Hotel, LLC*

16

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), the undersigned certifies that this document has been prepared in accordance with Local Rule 5.1(B).

*/s/ D. Austin Bersinger*
D. Austin Bersinger
Georgia Bar No. 144792

17

## CERTIFICATE OF SERVICE

I hereby certify on April 27, 2026, I served a copy of the within and foregoing DEFENDANTS GLOBAL MANAGEMENT & INVESTMENT CORPORATION AND SHIV GLOBAL HOTEL, LLC'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT upon all counsel of record in this matter by electronically filing a copy of same with the Court's CM/ECF system.

/s/ D. Austin Bersinger
D. Austin Bersinger
Georgia Bar No. 144792

18